Rachel Lewis, Administratrix, v. the New York Life Insurance Co.

## SUPREME COURT—IN BANCO.

### JULY TERM—1880.

*Judd and McCully, J. J., (Harris, C. J., dissenting).*

RACHEL LEWIS, ADMINISTRATRIX OF THE ESTATE OF SAMUEL LEVY LEWIS, DECEASED, *vs.* THE NEW YORK LIFE INSURANCE COMPANY.

#### ON EXCEPTIONS.

IN ACTION TO RECOVER the amount of a policy of life insurance, the Court refused to rule, on a motion for a non-suit, that the plaintiff could not recover, inasmuch as she had not shown that the statements and representations in the application were true;

HELD, no error, as the burden is on the defendant to show that the representations were untrue.

The Court admitted the testimony of M., T. and B., the last named being the defendant's special agent, as to conversations between the insured and the said B. as to the health of the insured, the objection by the defendant to such evidence being that it would tend to vary and contradict the written agreement in the application;

HELD, this evidence was properly admitted, as B. wrote the answers of the insured in his application, and there was evidence tending to show that the applicant made some disclosures in regard to his health that do not appear in the answers, and that B. made some representations to the insured as to the character and effect of the statements in his application. This worked an estoppel against defendants who were bound by the acts of their special agent.

The Court refused to charge that "if any of the statements or representations in the application are shown to be untrue, the jury will give a verdict for the defendant;"

HELD, error, for if any of the answers made by the insured were untrue, though made in "good faith," there was a breach of the warranty.

39

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

The Court refused to charge that "if the insured concealed from the defendant any material fact which it was important that the defendant should know, then the contract of insurance was tainted with fraud on the part of the insured, and the plaintiff cannot recover, but the jury will give a verdict for the defendant;"

HELD, error, for if the defendant can prove that there was a material fact in regard to the health of the applicant which he did not disclose because he was ignorant of it, it was fatal to plaintiff's recovery.

New trial ordered.

Opinion of a majority of the Court by JUDD, J.

The plaintiff's deceased intestate was insured by the defendant by a special policy for ninety days called a "Binding Receipt," for $5,000 on the 17th of November, 1879.

Question 13, in the application for insurance, is: "Has the party ever been seriously ill; if so, when, with what complaint, and who was the medical attendant; state his name and residence?" The answer recorded is: "No."

Question 14 is: "Is the said party now in good health?" The answer given is: "Yes."

Question 27 is: "Name and residence of person's usual medical attendant; on what occasions and for what diseases have you required his attendance and advice; (if the applicant has required the services of a physician during the last seven years, or for a serious illness before that period, his certificate must be procured, or the issuing of the policy may be delayed.") To this question the answer given is, "None."

Question 28 is, "Have you consulted any other medical man? If so for what, and when?" Answer, "No."

Question 11 required separate answers as to whether the party has had or been afflicted since childhood with any of the following complaints (naming a large list), to every one of which the answer "No" is given, as also to the last—"or any serious disease."

There was evidence adduced at the trial that Lewis, some months previous, had suffered from severe pain in his back

and was so ill in August, 1876, that for several nights he had had watchers; that Dr. O. S. Cummings had attended him. The doctor was unable to diagnosticate the disease to his satisfaction, but says he suspected aneurism, but was unable to locate it, and there is no evidence that he communicated his suspicions to Lewis. Lewis had been to San Francisco for his health, and was feeling well at the time he made his application. On the 29th November he died suddenly by the rupture of an aneurism on the descending aorta below the diaphragm, and caries of the spine had resulted from the pressure.

At the trial the jury rendered a verdict for the plaintiff, to which the defendant excepted, alleging errors of law by the Court in regard to the admission of evidence and in its charge to the jury.

I. The first exception is to the Court's refusal to rule, on a motion for non-suit, that the plaintiff could not recover inasmuch as she had not shown that the statements and representations in the application were true. We understand this to be the correct ruling, for where the contract is proved, the burden shifts to the defendant to prove the facts set up in avoidance of his liability, that is, that the statements and representations were untrue. See Campbell *vs.* N. E. Mutual Life Insurance Co., 98 Mass., 381. In Piedmont Life Insurance Co. *vs.* Ewing, 92 U. S. Supreme Court Reports, 379, the Court held that the burden of proving the truth of the answers in the application does not rest upon the plaintiff. The insurance company must prove their falsity.

II. The second exception is to the Court's admission of the testimony of Magnin, Testa, and C. O. Berger, the defendant's special agent, as to conversations between the insured and the said Berger as to the health of the insured, the objection by the defendant to such evidence being that it would tend to vary and contradict the written agreement in the application. It appears that Mr. Berger wrote the answers of the insured in the application, and there was evidence tending to show

Rachel Lewis, Administratrix, v. the New York Life Insurance Co.

that the applicant made some disclosures in regard to his health that do not appear in the answers, and that Berger made some representations to the insured as to the character and effect of the statements in the application.

This evidence was properly received. In the case of Insurance Co. vs. Wilkinson, 13 Wallace, 232 (U. S. Supreme Court, 1871), the agent of the company, who took down the answers of the applicant and his wife to all the interrogatories, was told by both of them that they knew nothing about the cause of the mother's death, or her age at the time, the wife being too young to remember it; but the agent inserted the age at death of the mother which was untrue, but which he obtained from a third person, and which he inserted without the assent of the insured.

The Court says: "If we suppose the party making the insurance to have been an individual, and to have been present when the application was signed, and soliciting the assured to make the contract of insurance, and that the insurer himself wrote out all these representations, and was told by the plaintiff and his wife that they knew nothing at all of this particular subject of inquiry, and that they refused to make any statement about it, and yet knowing all this, wrote the representation to suit himself, it is equally clear that for the insurer to insist that the policy is void because it contains this statement would be an act of bad faith and of the grossest injustice and dishonesty.

"And the reason for this is that the representation was not the statement of the plaintiff, and that the defendant knew it was not when he made the contract; and that it was made by the defendant, who procured the plaintiff's signature thereto. It is in precisely such cases as this that Courts of law in modern times have introduced the doctrine of equitable estoppels, or, as it is sometimes called, estoppels in pais. The principle is that when one party has by his representation or his conduct induced the other party to a transaction to give

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

him an advantage which it would be against equity and good conscience for him to assert, he could not in a Court of justice be permitted to avail himself of that advantage.

"This principle does not admit oral testimony to vary or contradict what is in writing, but it goes upon the idea that the writing offered in evidence was not the instrument of the party whose name is signed to it; that it was procured under such circumstances by the other side as estops that side from using it or relying on its contents; not that it may be contradicted by oral testimony, but that it may be shown by such testimony that it can be lawfully used against the party whose name is signed to it."

It is urged that the defendant is not bound by the acts of the agent in this respect. In the last quoted case the Court say that "an insurance company establishing a local agency must be held responsible to the parties with whom they transact business for the acts and declarations of their agent, within the scope of his employment, as if they proceeded from the principal."

These principles were affirmed in the same Court in 1874. Insurance Company *vs.* Malone, 21 Wallace, 152. In this case the Court say: "True answers were in fact made by the applicant, and the agent substituted for them others, now alleged to be untrue, thus misrepresenting the applicant as well as deceiving his own principals. Nor do we think that it makes any difference that the answers as written by the agent were subsequently read to Dillard (the applicant) and signed by him. Having himself answered truly, and Yeiser (the agent) having undertaken to prepare and forward the proposals, Dillard had a right to assume that the answers he did make were accepted as meaning, for the purpose of obtaining a policy, what Yeiser stated them to be. The acts and declarations of Yeiser are to be considered the acts and declarations of the company whose agent he was, and Dillard was justified in so understanding them."

Rachel Lewis, Administratrix, v. the New York Life Insurance Co.

III.    The third exception is to the Court's refusal to charge that, " If any of the statements or representations in the application are shown to be untrue, the jury will give a verdict for the defendant;" and

IV.    " If the insured concealed from the defendant any material fact which it was important that the defendant should know, then the contract of insurance was tainted with fraud on the part of the insured, and the plaintiff cannot recover, but the jury will give a verdict for the defendant."

The application signed by the insured contains the following:  "And I do hereby agree that the statements and representations contained in the foregoing application and declaration shall be the basis of the contract between me and the said company, the truthfulness of which statements and representations, whether written by my own hand or not, I do hereby warrant, and that if the same or any of them are in any respect untrue the policy which may be issued herein shall be void, etc."

The special policy issued contains the clause that the defendant "Insured the life of Samuel L. Lewis for ninety days from the date hereof," in accordance with the application, and the Court held that the application was the test of the contract.

The Court charged the jury that the insured was bound to use the utmost good faith in his answers, but was not bound to represent what he did not know, or did not remember.

The question is, whether, considering the plain and unqualified language of the contract which warrants the truth of the statements and representations in the application, the language of the Court in its charge was sufficient.

An express warranty is defined to be a " stipulation inserted in writing on the face of the policy on the literal truth or fulfillment of which the validity of the entire contract depends." May on Insurance, S., 156.  " A misrepresentation, whether made intentionally or through mistake, and in good faith, avoids the policy on the ground that, in either case, the injury to the insurer is the same."    May, S. 181.

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

In Foot *vs.* Ætna Insurance Company, 61 N. Y., 671, Foot, the insured, had answered "No," in response to the question: "Has the party ever had any of the following diseases; if so, how long and to what extent; * * * spitting of blood, consumption, * * * diseases of the lungs, etc." Also to the question, "Has the party had, during the last seven years, any severe illness?" he answered "No." The policy contained a clause that "any untrue or fraudulent answers, etc., shall render the policy null and void." It appeared in evidence that Foot had had two hemorrhages from the lungs. The lower Court charged the jury "that Foot's answers did not vitiate the policy, unless knowingly untrue."

The Commission of Appeals, Earle, J., said: " Parties to insurance contracts have the right to make their own bargains as in other cases. * * * All the representations of the assured contained in the policy by being written therein, or incorporated therein, by reference to the proposal, are warranties, and must be substantially true, or the policy will be void. * * * It matters not whether the representatives are material or not. The parties have made them material by inserting them; and it matters not if the party insured made the true statements innocently, believing them to be true."

In the case of Gach *vs.* Ingall, 14 M. and W., 95, the assured had answered " No " to the question as to whether he had spit blood. The charge to the jury was that it was for them to say whether at the time of making the statement set forth, the assured had had such a spitting of blood and such an affection of the lungs and inflammatory cough as would have a tendency to shorten life. The Appellate Court held that this was a misdirection, the question must be answered specifically whether he had ever spit blood, so as to put the insurers upon inquiry.

In Jeffries *vs.* Life Insurance Company, 22 Wallace, 47, (1874), the policy contained the clause " that the statements

Rachel Lewis, Administratrix, v. the New York Life Insurance Co.

and declarations made in the application are in all respects true." The applicant had answered that he was unmarried, whereas he was a married man. It was claimed that the false answer was not to the injury of the Company, as it presented the applicant's case in a less favorable light to himself than if he had answered truly. The Court held that the untrue answer avoided the policy, irrespective of the materiality of the answer given to the risk. The Court says: "The proposition at the foundation of this point is this, that the statements and declarations made in the policy shall be true. This stipulation is not expressed to be made as to important or material statements only, or those supposed to be material, but as to all statements. * * * Nothing can be more simple. If he makes any declaration in the application, it must be true. A faithful performance of this agreement is made an express condition to the existence of a liability on the part of the Company."

In the Ætna Life Insurance Company vs. France, 91 U. S. Supreme Court Reports, 510, (1875), the same Court affirmed this decision.

The Court below had left it to the jury to say whether in their opinion a rupture, which the deceased had, materially affected his health, or whether there was, in his answering as he did, any falsehood or willful suppression. This was held erroneous, as the applicant had by his contract bound himself to give true answers to all questions.

There is an instructive English case which has been often quoted with approbation by many Courts, that of Duckett vs. Williams in 2 C. and M., 348. It bears a close analogy to the one we are considering.

The head note reads: "By a declaration and statement as to health, etc., signed by the assured previous to effecting a policy on a life, it was agreed that if any untrue averment was contained therein, or if the facts required to be set forth in the proposal were not truly stated, the premiums should be

forfeited and the assurance be absolutely null and void. The statement as to the health of the life was untrue in point of fact, but not to the knowledge of the party making it; held, that the premium was forfeited and could not be recovered back."

Lord Lyndhurst, C. B., in this case says: "The point is whether the facts stated were not truly stated within the meaning of declaration and agreement. It was contended on the part of the plaintiffs that the words must mean 'truly' and 'untruly' within the knowledge of the party making the statements, and that if the party insuring ignorantly and innocently makes a misstatement, he is not to forfeit the premiums under the clause in question. We are of opinion, however, that this is not the real meaning of this clause. A statement is not the less untrue because the party making it is not apprised of its untruth; and looking at the context, we think it clear that the parties did not mean to restrict the words in the manner contended for. Two consequences are to follow if the statement be untrue—one, that the premiums are to be forfeited; the other, that the assurance is to be void. Now, if the statements were untrue within the knowledge of the party making it, the assurance would be void without any such stipulation. The knowledge of the party is clearly immaterial as to this last consequence, and therefore must be so as to the first; for it would be contrary to all the rules of construction to hold that it was material as to one consequence and not as to the others."

But the leading English case on the subject of warranties in life insurance cases is that of Anderson vs. Fitzgerald, which went to the House of Lords (reported in 24 English Laws and Equity Reports, 2). Under a warranty similar to that of the case before us the House of Lords held that the question for the jury was not whether the statements were false and material, but simply whether the statements were false. The opinions of this high Court, numerously attended by Peers

40

learned in the law, are entitled to the greatest weight. Baron Parke, the Lord Chancellor, Lords Brougham and St. Leonards all delivered opinion to the same effect.

May on Insurance, Section 206, sums the matter up in these words: "Always, however, to be remembered is that class of cases where the insured has bound himself hand and foot by a stipulation that his application contains a just, full and true exposition of all the facts inquired for, or its equivalent in a different form of words, and is to be deemed a warranty. In these, according to the received interpretation, no question of knowledge, good faith, or materiality arises; it is simply a question of the truth and fullness of the answers; and a want of either is fatal. Such policies are practically no security at all. The insured is at the mercy of the insurer, and if the applicant will be so imprudent as to make such a bargain the Courts cannot help him." This being the state of the law, we are not to consider any question of the harshness of this ruling. The parties have made their contract in which the applicant warrants the absolute truth of the answers made to the questions.

If he answered "no" to the question if he had consulted a physician within the last seven years; and if the truth be that he had, whether he remembered it or not, the law is settled that, having warranted the truth of his answers, the policy is void.

The defendant was entitled to have his third instructions prayed for given to the jury; and as it was not given, there must be a new trial, for we cannot say whether the jury may not have found that the answers made by Lewis, though untrue, were made in good faith, and under the instructions given they would be entitled to hold that they constituted no breach of the warranty.

It is quite within the power of an applicant for insurance, where he does not know the facts inquired for, to so state. He is only bound by the answers he makes. The case of In-

surance Company *vs.* Gridley, 100 U. S., 614 (October, 1879), is in point. The application set forth that if any of the statements or declarations in the application for this policy, and upon the faith of which it is issued, shall be found in any material respect untrue, then  *   *   * this policy shall be null and void. In reply to a question whether any of his relatives had any hereditary disease he answered: "No hereditary taint of any kind in family on either side of house to my knowledge." The company proved that twenty years before the application was made the applicant's uncle had been insane for a year, and had died in an insane asylum.

The Court say: "The affirmation was restricted and narrowed down to what the applicant personally knew touching the subject. It has this extent; no more. The company might have refused to insure• unless the qualifications were withdrawn. Having failed to do this, such is the contract of the parties.

"To make out the defense sought to be established by the insurers three things were therefore necessary to be shown— that the alleged insanity of the uncle had existed, that it was hereditary, and that both these things were known to the applicant when he answered the question."

There are many cases reported in which insurance companies have incorporated into their policies or applications for insurance language like the following: "If any fraudulent concealment or designedly untrue statement shall be contained therein, then the policy shall be void;" or where the applicant is instructed to "answer each of the questions on the first page to the best of your knowledge and belief" or where the warranty concludes, "so far as the same are known to the applicant." In these cases the Courts have uniformly held that the qualifying language controlled the effect of the warranty, and the parties were held only to statements and representations of facts which were within their knowledge.

See National Bank *vs.* Insurance Company, 95 U. S., 673,

(October 1877). So where words in explanation are used in the policy or application which show that a strict warranty was not intended, the explanations will govern. Fitch *vs.* American Popular Insurance Company, 59 N. Y., 557, also Hall *vs.* Insurance Company, 6 Gray, 185.

We have diligently examined the application in the case before us and we find no words qualifying the language of the warranty in any respect. But it is urged that the question, "Has the party any serious disease?" is one to which the warranty of absolute truthfulness does not apply. "Representations," says May, Section 200, "should not only be true but they should be full. The insurer has a right to know the whole truth, and a lack of fullness if designed, in a respect material to the risk is tantamount to a false representation and is attended by like consequence. This lack of fullness is termed a concealment, which is the designed and intentional withholding of some fact material to the risk which the insured in honesty and good faith ought to communicate to the insurer." In the next section the learned author remarks: "Of course, where the truth and fullness of a statement are warranted, it is no longer a question of concealment, but of the truth and fullness of the statement."

In the case at bar the application contains these words: "I do hereby declare that the person above named whose life is proposed for insurance is now in good health, and does ordinarily enjoy good health, and that in the above proposal I have not withheld any material circumstance or information touching the past or present state of health or habits of life of said person with which the Trustees of the New York Life Insurance Company ought to be made acquainted," * * * then follows the warranty which warrants the truthfulness of the statements and representations in the foregoing application and declaration. The "declaration" referred to is that just quoted, wherein the applicant declares that he has withheld nothing touching his past or present health which the

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

company ought to know. This is equivalent to a warranty of the fullness of the representations made; and consequently there can be no question as to whether there was concealment of any fact known to the applicant. He has warranted that he has concealed no material fact which the defendant ought to know. This is the contract of the parties, the legal effect of which is that if the defendant can prove that there was a material fact in regard to the state of health of the applicant, which he did not disclose because he was ignorant of it, it is fatal to the plaintiff's recovery.

This is covered by the fourth instruction prayed for, and which was not given to the jury.

New trial ordered.

Castle & Hatch for plaintiff.

A. S. Hartwell and B. H. Austin for defendant.

Honolulu, September 25, 1880.

---

### DISSENTING OPINION OF CHIEF JUSTICE HARRIS.

I think a new trial should not be granted. It being determined that the instructions to the jury, to the effect that the burden of proof was on the defendant company were correct; and further, that the ruling of the Court was correct, in admitting testimony with regard to conversations between the insured, now deceased, and the defendant company's agent, the whole case was for the jury.

It was in evidence and admitted the defendant's agent wrote the answers himself. The testimony of Magnin and Testa tended to show that the deceased made answers, with regard to his health, which do not appear in the written answers; as for instance that he had been sick a short time ago; that he had employed Dr. Cummings, a medical practitioner in this town; but it does not appear that the defendant's agent saw fit to examine or thought it necessary to obtain this physician's certificate, and the jury have determined by their verdict that though the defendant's agent

wrote down that the deceased had no medical attendant, in answer to the twenty-seventh question—and in answer to the twenty-eighth question, that he had consulted no other medical man, yet the answer in point of fact was that he had had a medical adviser, Dr. Cummings. The thirteenth question is as follows: "Has the party ever been seriously ill; if so, when, with what complaint, and who was the medical attendant; state his name and residence." The verdict of the jury determines that though defendant's agent wrote "No," in point of fact, the deceased answered that he had been sick and had gone to California for his health; that he had been sick here and had been treated by Dr. Cummings, but felt well at the time of his application. The same evidence tended to establish that the defendant's agent made representations as to the character and effect of the statements in the application. The deceased had none of the complaints specially enumerated in the long list set forth in the application, and died of an aneurism. Though Dr. Cummings said that he suspected aneurism, he did not communicate any such suspicion to the deceased, or, as far as it appears to any of his friends. Dr. Cummings himself testified that he did not know what was the matter with him; that the deceased suggested kidney disease; that the doctor examined the urine and could not name the disease; that he asked him how he was, when he returned from California, and he said that he was well, and I thought so too. Now, it must be conceded if the insured made a fair exposition of the previous state of his health, and the defendant's agent assured him that within the scope and intention of these questions, he was not seriously ill, and so wrote it down, the company is bound by the acts and statements of their agent.

It is said that the Court instructed the jury that in answering the questions the insured was bound to use the utmost good faith, but was not bound to represent what he did not know, and did not remember; and it is said this ruling is wrong.

The word "remember" was used with reference to such facts as would ordinarily be deemed immaterial, and was therefore merely used incidentally; for there was no question regarding the man's memory. It was used to illustrate the idea that a man questioned upon his illness during a period long past could not be expected to remember and speak of small matters of indisposition such as are not usually called sickness, such as casual sore throat or headache. I apprehend this will be found to be a correct ruling in that connection.

The words that the applicant was not bound to represent what he did not know were used with regard to the expression "serious illness."

The law seems to me to be well summed up in May on Insurance, Section 202. "It has been held that there is no concealment if the fact omitted was believed to be immaterial by the applicant." The question was whether the applicant had had any sickness within the last ten years, and the answer was that he had had "pneumonia," but said nothing of a "slight attack of chronic pharyngitis." It was held to be no concealment, as the party was not bound to state such facts as would ordinarily be deemed immaterial, such as that he had had a cold, or a diarrhea, or an irritation of the throat, not fairly embraced in what is popularly understood as sickness.

I have said the word "remember" was merely incidentally used, because there was no question in regard to the man's memory, it being averred on one hand that the deceased had stated that he had no serious illness, and had consulted no physician, and on the other it was maintained that he not only *remembered* but *stated* that he had gone to California for his health, and had there been under the care of a physician whom he named. I conceive that the whole of the answers written by defendant's agent are controlled by this testimony.

But it is said that if he answered "no" to the question whether he had a "serious disease," and had one at the time, whether he knew it or not, this untrue answer, though made

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

in honesty and good faith, is a breach of the warranty and renders the policy void.

With great respect I do not think the law can be so holden when applied to questions of this general nature, such as had the party been seriously ill, "What is the present and general state of health of parties referred to in queries 16, 17 and 18; as for instance take the 16th question: Are the parents living?"

This applicant is insuring here at Honolulu; the parents, if living at all, are residing in a distant country. He answers thus: his father is living at the age of 67, his mother at the age of 64. Now suppose that the next mail brings intelligence that one or both of his parents had deceased some weeks before, can it be said that his policy of insurance was void because he had warranted them to be alive at that date? The 18th question speaks of the health of three brothers and four sisters as "good," all of them being in a distant land; and if it should afterwards be discovered that one or two of them were sick of a fever at the date of the application, unknown to the applicant, would his policy be void because he had warranted their health? In the case of the Insurance Company *vs.* Wilkinson, 13 Wallace, one of the questions to the applicant was, had she ever had a "serious personal injury?" to which the answer was "no." She had fallen from a tree ten years before. The Court says: "The accidents resulting in personal injuries, which at the moment are considered by the parties 'serious,' are so very numerous that it would be almost impossible for a person engaged in active life to recall them at the age of forty or fifty years; and if the failure to mention all such injuries must invalidate the policy, very few would be sustained where thorough inquiry is made into the history of the party whose life is the subject of insurance. There is besides the question of what is to be considered a 'serious' injury at the time. If the party gets over the injury completely without leaving any ill consequences, in a few

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

days, it is clear that the 'serious' aspect of the case was not a true one."

In May on Insurance will be found the following note appended to Section 156: "Though we have treated the several subjects of warranty, representations and concealment in separate chapters, it will be seen that these subjects are so nearly allied that cases illustrative of each have much in common, and if it were material it would be difficult to determine under which chapter to arrange them. For the most part a case in either chapter will illustrate the others, as the several subjects are almost invariably discussed together." And again, "if a warranty be a statement of facts it must be literally true."

But the question whether the disease or accident is serious or not, as has been shown above in Wilkinson's case, is a matter of opinion until the final event has demonstrated its seriousness. In Denison *vs.* the Thomaston Mutual Insurance Company, one of the questions to the applicant was about the distances of other buildings from the premises insured. The answer was, "east of the block are small, one-story woodsheds, and would not endanger the buildings if they should burn."

In point of fact, these wood-sheds were within fourteen feet of some two-story wooden buildings on another street, which, having taken fire communicated the fire to the plaintiff's house. Now the condition of insurance was as usual in fire insurance, that no circumstance material to the risk is withheld, which appears to me to be a very similar question to that in life insurance policies which is under consideration, the Court says: "In the case at bar, it has now been rendered undeniable, that the burning of the two-story buildings on another street, endangered the plaintiff's house; and in the interrogatory propounded it would now seem that the existence of those buildings might with propriety have been stated. But this does not prove that, before the occurrence of the fire, it would have been material to name them, as being near enough to put the plaintiff's house in jeopardy. It is not an

41

unfrequent occurrence, after a disaster has happened, that we clearly discern that the cause which may have produced it would be likely to have such effect, while, if no such disaster had occurred, we might have been very far from expecting it." In Horn *vs.* the Amicable Mutual Life Insurance Company, 64 Barbour, 82, the Court remarks: "In applications for marine and fire policies, the statements relate to material facts and it is negligence or fraud on the part of the applicant for a policy, if he does not truly represent the facts. There is every reason in favor of holding such statements to be warranties." "In respect to life policies it may be wholly different. The applicant may not know enough of the human system to be aware of the existence of some affection of a vital organ. The victim of Bright's disease, or of an affection of the heart, liver or lungs, may be, and often is, in the enjoyment of such a condition of health and strength as to lead him to the belief that his vital organs are all sound. It would be monstrous to hold in such a case that the applicant warranted himself to be sound, as to those organs, by an answer to the effect that he was never sick or had no disease of those organs. The Company retain their own medical advisers for the purpose of making a careful and scientific examination of all applicants for life insurance; and they are far better able to detect incipient disease than the subject in most cases. I think these statements are not understood or intended by the parties as warranties. I think the Judge at the trial properly held that the inquiry was one of fair and honest dealing on the part of the applicant; and that the statements concerning the condition of his health were not warranties."

I wish always to draw a distinction between the answer to the questions which are particularly placed and the answer to the general questions. Many decisions have been made in cases of those who have answered that they had not consumption, and the event has proved that they had. Now, although such persons may not know that they had con-

Rachel Lewis, Administratrix, *v.* the New York Life Insurance Co.

sumption, yet any one must know that he had the symptoms of it, and was, therefore, bound to state them. By the evidence it appears that this deceased, when he was asked if he had had any serious illness, replied that he had had an illness, "serious" enough to induce him to repair to California for his health, and to take medical advice here. He did not tell them he had the aneurism of which he died, for he did not know it himself, nor did his medical advisers know it; he stated he believed himself well then, and his physician believed him well. In Hutchinson *vs.* the National Loan Insurance Society, quoted in May on Insurance, Section 202, 7 Ct. of Sess. Cas. (Scotch) 467, "a warranty that the insured had no disease or symptom of disease was held to import only that, according to the knowledge and reasonable belief of the insured, there was freedom from any disease or symptoms of disease material to the risk." "So in Jones *vs.* Provincial Life Insurance Company, quoted as above, it was said that if the assured honestly believed that these attacks had no tendency to shorten his life, his failure to mention them would not avoid the policy. What other persons of intelligence do not know or believe or apprehend cannot reasonably be expected of the insured. And what he cannot be expected to know, he cannot be considered as culpable for not knowing; and what he cannot be expected to apprehend he cannot be bound to communicate; and in not communicating any such fact, he cannot be considered as concealing it even inadvertently, much less willfully." In the cases relied upon, for an opposite view, facts were concealed which were known actually or presumptively "to be material" and none of these cases actually decide upon the facts anything more than that the assured was bound to communicate all facts known to him, and by him believed to be material, presuming that he knew and believed what men of ordinary intelligence know and believe. In this view the cases are reconcilable. Again, at Section 296, the same author says:

Rachel Lewis, Administratrix, v. the New York Life Insurance Co.

"As to the ordinary question whether the applicant has ever had any serious illness, as the word serious is a relative term, involving a question of degree, and it being certain that there are all degrees of illness from the slightest, about which no concern is felt by any one, to the most aggravated, attended by the most alarming developments and the most serious consequences, about which there is everywhere the highest degree of concern, and as even a disease regarded in its course as of the most trivial in its character may be followed by the most serious results, it seems to be a question of opinion, the expression of which should be based upon intelligence and good faith. What one may call serious another might not; and where there is no test furnished by the insurers by which the applicant can know what serious illness means, his failure to mention one which he does not regard as serious works no forfeiture of the policy, though in fact the illness not mentioned was a serious one." Life Insurance Company, 6 Rob., N. Y. (Supr. Ct.), 567. In such cases the rule seems to be that if the injury call for an answer which involves a matter of opinion, the applicant is answerable only for the honesty of his opinion, although the answer be untrue, in fact, and substantially the same rule was laid down in Hutchinson vs. National Loan Insurance Society, where the inquiry was whether any material circumstances touching health or habits of life with which insurers ought to be made acquainted was withheld, and it was decided that the answer was only a warranty to the extent of the knowledge and reasonable belief of the insured." See May on Insurance, Section 296, p. 232. I have preferred to use the words and quotations of this author, because they express so exactly my view of the law upon this subject. In the case of Duckett vs. Williams, it is certainly ruled that the policy would be void although the representations were innocently made by the insurer; but the representations were not made by the man himself. By which I mean the subject of the insurance was not the applicant, but the statement was made by the

Trustees of the Provident Life Office seeking to reinsure the life of one Stephenson, they being not shown to be aware of the ill health of Stephenson, though Stephenson was in ill health at the time. The difference is very obvious between a man who honestly says that he himself has no serious illness of which he has no symptoms, and the man who states that a third party, whose symptoms he can not and does not know, is in sound health.

"When a person answers that his health is good up to the present time, it does not import a perfect physical condition, but does import only that the applicant is free from ostensible, known, or felt symptoms of disorder, and the answer warrants that fact and that alone, and does not warrant the non-existence of latent and unknown defects." See May on Insurance, Section 295.

Therefore, it appears to me on principle as well as authority that the instructions to the jury were correct.

Honolulu, September 25, 1880.