CHOY LOOK SEE *v.* ROYAL INSURANCE COMPANY.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED DECEMBER 6, 1901.    DECIDED FEBRUARY 6, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

The words "to be occupied," in the description of a building in an insurance policy, do not constitute a waiver of a provision that the building should not remain unoccupied beyond a limited period.

Knowledge by the insurer at the inception of the contract that a building was then unoccupied would estop it from afterwards setting up the fact of nonoccupancy however long continued, if the policy forbade nonoccupancy altogether; but it would not estop it from setting up the fact that nonoccupancy continued beyond a limited period if the policy permitted nonoccupancy for that period.

A policy covering two buildings is indivisible and therefore void as to both buildings if void as to one, when it is given for an indivisible consideration, and when by its terms the "entire policy" is to be void in case of a breach of condition as to "a building" described therein, and when the buildings are so situated with relation to each other as to constitute practically one risk, and perhaps it would be void irrespective of such relative situation.

Under our practice judgment *non obstante* may be ordered for the de-

fendant as well as for the plaintiff and on the evidence as well as on the pleadings when the facts are undisputed.

OPINION OF THE COURT BY FREAR, C.J.

(Galbraith, J., dissenting.)

This is one of many insurance cases arising out of the burning of "Chinatown" in the city of Honolulu on January 20, 1900. The policy is for $1000 upon two buildings, one on the East corner of Beretania and River streets, the other on the same side of River street 60 feet from the same corner. The fire spread to these buildings from other buildings which had been set on fire by order of the Board of Health because of infection by bubonic plague. See *Wong Chow v. Trans. Fire Ins. Co.*, 13 Haw. 160 and *Haw. Land Co. v. Lion Fire Ins. Co.*, *Id.* 164.

The jury found for the plaintiff in the full amount of the policy. The case comes here on numerous exceptions, including exceptions to the rejection of evidence, to the refusal to order a non-suit, to the giving and refusing to give to the jury various instructions, and to the denial of a motion for a new trial. The principal questions raised are: (1) Whether the defendant is estopped from setting up a forfeiture based on the facts that the buildings were on ground not owned by the insured in fee simple and (2) that one of the buildings was unoccupied at the time of the insurance and so remained for ten days and more; and (3) whether the wind or the order of the Board of Health was the proximate cause of the fire. It will be sufficient to pass upon the second only of these questions.

One of the buildings was unoccupied at the time the insurance was effected and remained so until the fire occurred seventeen days afterwards. The policy provided, among other things, that,

"This entire policy, unless otherwise provided by agreement indorsed hereon, or added hereto, shall be void    *    *    *    if

a building herein described, whether intended for occupancy by owner or tenant, be or become vacant or unoccupied and so remain for ten days."

It provided also that,

"No officer, agent or other representative of this company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

. There is no agreement indorsed on or added to the policy, as required by its terms, to the effect that one of the buildings might remain unoccupied indefinitely. Indeed, the only reference to the matter of occupancy of the building in question, outside of the printed terms of the policy above quoted, is that contained in the words "to be occupied," found in the type-written description of the building. But these words, it goes without saying, rather require the building to be occupied than permit it to remain unoccupied. And so counsel do not contend that there has been a waiver in accordance with the terms of the policy. They contend that the defendant is estopped from setting up the fact that the terms of the policy have not been complied with.

The only fact relied on to show estoppel is that the insurer knew, through its agent, at the time the policy was issued, that the building was unoccupied. This no doubt would work an estoppel if the provision of the policy were that it should be void if the building should be or become unoccupied at all. There is a distinction between a waiver of a breach which occurred or knowledge of which was acquired after the inception of the contract, and an estoppel by reason of knowledge at the outset of facts which by the terms of the policy would otherwise render it void. In the former case a valid contract would have been

entered into, by the terms of which the parties would be bound afterwards, while in the latter case the insurer would have accepted a premium for a policy which it knew at the time was void and so would perpetrate a fraud, unless it were held estopped. Accordingly it is held that the insurer cannot rely on a failure to indorse on the policy as required by its terms a non-compliance with its provisions, when it had knowledge of such non-compliance at the time it accepted the premium and delivered the policy. There is, it is true, much to be said in support of the opposite view, but the view we adopt seems to be more in accord with justice and to have the better support in authority. Perhaps as clear and forcible statements of the two views as can be found are those of the majority and dissenting opinions in the recent case of *Northern Assur. Co. v. Grand View Bldg. Ass'n,* 101 Fed. R. 77, decided by the United States Circuit Court of Appeals for the Eighth Circuit, in accordance with the view we have taken, under a policy which contained the identical strict provisions of the policy now in question. See *Lewis v. N. Y. Life Ins. Co.,* 4 Haw. 305, 370.

But the foregoing reasoning has no application to a case like the present in which nonoccupancy is not forbidden altogether but on the contrary is permitted for a limited period. The reason why nonoccupancy cannot be relied upon as a defense, notwithstanding the terms of the policy, when the insurer has knowledge of that fact at the time and the policy does not permit any vacancy at all unless so agreed by indorsement, is that the insurer would otherwise perpetrate a fraud by accepting the premium for a policy known to be void at the time. But this reason obviously has no application where nonoccupancy for a time is permitted by the terms of the policy itself, for in such case the policy is valid at its inception and continues so until a breach of one of its conditions, and it is immaterial that the condition, the subsequent breach of which is relied on, is that relating to occupancy. In this case, the policy was to be void if a building described therein should "be or become vacant or unoccupied and so remain for ten days." The policy itself

contemplated vacancy either at the time or afterwards and permitted this to continue for any period less than ten days. It was immaterial whether the insurer knew of the vacancy at the time or not. The policy was valid at its inception and would so continue, so far as this condition was concerned, if the insured did not commit a breach by permitting the vacancy to continue for a period longer than that permitted by the policy. The case might perhaps be different if the circumstances were such that the insurer knew not only that the building was unoccupied at the time but also that it could not be occupied within the time limited by the policy, as, for instance, that it was in course of erection and could not be completed so as to be fit for occupancy within that time. The evidence, however, shows a different state of facts. The testimony of the plaintiff's husband who acted for her in the matter, was that the clerk who acted for the defendant, first asked, when soliciting the insurance, if he (the witness) had completed the building, saying that he (the clerk) wished to insure the place, and that he (the witness) replied "Very well." He testified also that the building was then completed except that some carpenter work about the windows and some painting remained to be done and that, "if a party had rented it, it was ready for occupancy," on the day the policy was issued. The policy itself also shows, as stated above, that there was no intention to waive the requirement of occupancy altogether or indefinitely, for it describes the building in question as "to be occupied." There are, it is true, cases that have not distinguished in regard to this point between policies which forbid nonoccupancy altogether and those which permit it for a limited time, but they are cases in which, if there were not other facts to distinguish them from the present case, the courts did not notice the distinction or give any valid reasons for failing to observe it. The latest case that has come to our attention on this point is *Moore v. Niagara Fire Ins. Co.*, 199 Pa. St. 49 (48 Atl. 869). In that case, the court after careful consideration of the whole question and a review of the authorities, came to the conclusion that there was no estoppel from a knowl-

edge of nonoccupancy at the time, under a policy like that now under consideration. See also *England v. Westchester Fire Ins. Co.*, 81 Wis. 583; *Thomas v. Hartford Fire Ins. Co.*, 21 Ky. L. Rep. 1139 (56 S. W. 264); *Conn. Fire Ins. Co. v. Tilley*, 88 Va. 1024 (14 S. E. 851). It follows, therefore, that the policy was void as to the unoccupied building at least.

The policy being void as to the unoccupied building was void as to the other building also. This too is a proposition in regard to which there is an irreconcilable conflict of authority. The language of the policy would seem at first glance to be clear enough. "This *entire policy* * * * shall be *void* * * * if *a* building herein described * * * be or become vacant or unoccupied and so remain for ten days." There are several classes of cases upon this point. Some courts hold that although, as in this case, the consideration is entire, that is, the premium is a gross sum and the amount of insurance is also a gross sum and the provision is that "this policy" or "this entire policy," &c., shall be void, the mere fact that the amount of insurance is distributed by the terms of the policy among the various items insured, is sufficient to show that the contract is severable or divisible and that its being void as to one item does not affect its validity as to the other items. They hold this even though the items are so related that the burning of one would in all probability result in a destruction of the other, as where the items are a building and the goods in the building. In some cases an attempt is made to justify such ruling by the statement that the insurance might have been effected by separate policies on the respective items, in which case the voidance of one policy would not affect the other, and that the insured ought not to suffer because for convenience all the items have been included in one policy. This of course assumes that the insurance could have been effected on the respective items separately at the same rate, which is no doubt true in some cases and not true in other cases. A larger number of courts hold that under terms like those in this policy and especially in view of the fact that the consideration is entire, the contract is not

divisible. They say that even if the insurance could have been effected in different policies at the same rate, yet this was not done; that the parties have made their contract; that it should be construed by the same rules that are applicable to other contracts; that the court cannot make a different contract for the parties; and that the object of distributing the amount among the different items is to limit the amount to be recovered in respect of each item and not to make the contract severable. A third class of courts, in an effort to effect justice, take a middle course and hold the contract to be entire where the items insured are so related that the burning of one would endanger the others, and divisible where they are not so related. No doubt policies of insurance should be construed strictly against the insurer and liberally in favor of the insured, but this rule applies in cases of doubt. It does not mean that policies should be given meanings which their language cannot reasonably bear or that insurers have no rights or that the terms of valid contracts should not be enforced though they may appear to be harsh. It would in our opinion be in violation of established principles of law and recognized principles of justice, to adopt the first of the above views and hold that the contract was severable under the circumstances of this case irrespective of the question whether the burning of the one building would endanger the other. Even if, in an effort to hold the insurance company liable, assuming that such an effort should be made, we should adopt the middle ground above referred to and hold that as matter of law the contract would be divisible in case the burning of one building would not endanger the other, the facts would not support us. The buildings were both shingled-roof frame buildings, built for stores on the ground floor and dwellings on the other floors. The occupied one (upon which there was insurance for $250 under this policy and for $500 under another policy) was a two story building. The unoccupied one (upon which there was insurance for $750 under this policy) was a three story building. The latter building was next to the former. And as already stated the two were owned by the

same person who had insurance on both buildings. Under these circumstances it could hardly be claimed that the burning of the three story building would not endanger the other or that a fact—nonoccupancy—which would increase the risk as to one would not increase it as to the other. Numerous cases upon this subject are cited in 28 Century Digest, 954 *et seq.* One of the strongest of the recent cases supporting the view that the contract is divisible is *Trabue v. Dwelling House Ins. Co.,* 121 Mo. 75. Cases taking the middle ground, that the contract is entire or not, according as the items insured are so related as to constitute in fact one risk or not, are collected in the note to *Wright v. Fire Ins. Ass'n,* 19 L. R. A. (Mont.) 211. A recent decision by a court of high authority holding that the contract is entire from the fact that there was but one premium is found in *Thomas v. Commercial Un. Ass. Co.,* 162 Mass. 29. One of the latest and most carefully considered decisions to the same effect that has come to our notice is that in the case of *So. Ins. Co. v. Knight,* 111 Ga. 622 (52 L. R. A. 70) from which we quote the following:

"The policy sued on in the present case insured both the stock of goods and the building in which it was contained. The premium due upon the policy was a gross sum. The question arises therefore, whether the breach of a warranty relating solely to the goods, and which precluded a recovery for their loss, would also bar a recovery for the loss of the building. The stipulation prescribing that the insured must take an inventory of his stock provides that in case of failure so to do 'this policy shall be null and void.' What was the intention of the parties with respect to the question just above stated? If this intention is to be derived from the language used,—and it must be,— it would seem to be clear that the contract was entire and indivisible, and that the breach of a condition which would work a forfeiture would avoid the entire policy, and not simply a portion thereof. The parties contracted that 'the policy' should be void in case of failure to comply with the iron-safe clause. The policy embraces insurance upon both the building and its contents, and the premium is payable in a gross sum. 'If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject of the contract may con-

sist of several distinct and wholly independent items.' 2 Parsons, Contr. 519. It was competent for the parties to make two separate and distinct contracts, one covering the goods, and the other the building, but they did not see proper to do this. They combined the two, and made the consideration moving towards the insurer a gross sum. They further provided that the contract—not a part of it—should be void under certain conditions. It may perhaps seem to be unreasonable that, simply for a failure to take an inventory of the stock of goods, the plaintiffs should be precluded from recovering the value of the building. But this does not affect the question. The question is, What have they agreed upon? If there was any room to doubt as to the intention of the parties, that construction which is most reasonable and most consonant with justice would be applied. But there is none. The parties have deliberately chosen to enter into an agreement whereby the policy shall be forfeited if the insured fails to do certain things, and he has failed to comply with his agreement. In such a case there is but one thing for the courts to do, and that is to enforce the agreement as made. The question as to whether a policy of insurance such as is involved in the present case constitutes a separable or an entire contract is no new question. It has been the subject of numerous decisions by the courts in this country, and they are in hopeless and irreconcilable conflict. The weight of authority is to the effect that the contract is entire, and that the breach of a warranty which relates solely to one class of property will avoid the entire policy, if the contract so provides. Text writers of great learning and ability have, after reviewing the decisions on both sides of this question, reached the conclusion that the contract is indivisible. We quote the following from 1 Wood, Fire Ins. p. 384: 'It is difficult to understand how it can be held that these contracts are several, when a gross premium is paid for the entire insurance. The court cannot say, as a matter of law, neither can the fact be shown, that the insurer would have been satisfied to take the risk separately at the same premium. By consenting to pay a gross premium for the insurance, the assured has signified his willingness to let the policy stand as an entire contract, subject in all its parts to the conditions imposed by the insurer; and there is neither reason nor equity in permitting the assured, after he has violated one of the conditions of the policy as to a part of the risk, to turn around and say that the condition only affected that portion of the risk

.to which the breach related.' Mr. Ostrander, after an elaborate review of the decisions, reaches the conclusion that those which hold the contract to be entire announce the sounder and better rule. Ostrander, Fire Ins. §23 *et seq.* See also 2 Joyce, Ins. §1931; 1 May, Ins. §277. In support of the views herein announced, we find the courts of last resort of Maine, Wisconsin, Maryland, Minnesota, Virginia, New Hampshire, Massachusetts, Vermont, Pennsylvania, New Jersey, Michigan, Indiana, Arkansas, Iowa, Alabama, and Connecticut. * * * Opposed to this view are decisions of the courts of last resort of Nebraska, Colorado, Kansas and Missouri. * * * The courts of New York and Indiana seem to have been at different times on both sides of the question now under consideration. * * * Our conclusion is that where an insurance policy is issued in consideration of a gross premium, and provides that the policy shall be void in the event of a breach of a certain condition therein named and this condition is broken, no recovery can be had on the policy, though separate classes of property are therein insured, and though the stipulation violated relates solely to a matter which could have connection with but one of these classes."

It may seem hard to hold that the breach of the condition as to occupancy avoids the policy although it in fact had nothing to do with the burning of the property. But such was the contract made by the parties themselves. It was competent for them to make such a contract and the court must give it effect. The insurer might have extended the period of nonoccupancy if the insured had applied for an extension, but whether it shall now waive or rely on the breach is not for the court to say. That the breach may be relied on under the terms of the policy although it did not contribute to the loss is well settled. *Imperial Fire Ins. Co. v. Coos County*, 151 U. S. 452.

Under the practice established in this jurisdiction judgment *non obstante veredicto* may be ordered for the defendant as well as for the plaintiff and on the evidence as well as on the pleadings when the facts are undisputed. See *Estate of Kamaka*, 9 Haw. 245. This was done in an insurance case in *Lewis v. N. Y. Life Ins. Co.*, 4 Haw. 305. The facts are undisputed in the present case so far as the question of occupancy

is concerned. The trial judge should have directed a verdict for the defendant.

The exceptions are sustained, the verdict set aside, and the case remanded to the Circuit Court with directions to order judgment for the defendant *non obstante veredicto.*

*Magoon & Thompson* and *Hatch & Silliman* for plaintiff.

*Robertson & Wilder* and *L. A. Thurston* for defendant.

DISSENTING OPINION OF GALBRAITH, J.

One of the alleged errors presented by the defendant's bill of exceptions was the ninth instruction wherein the court charged the jury as follows: "The jury are instructed that the company having written upon the face of its policy that one of the buildings was occupied and the other to be occupied, constitutes a waiver of any claim of forfeiture by the company on the ground that the building referred to in the second clause of the typewritten matter upon the face of the policy was unoccupied for more than ten days."

The question presented by this exception is, Did the court correctly state the law?

The defendant contracted to indemnify the plaintiff for the term of one year from noon of the third day of January, 1900, to noon of January 3, 1901, against all direct loss or damage by fire, except as otherwise provided in the contract, to an amount not exceeding one thousand dollars to the property described. On a typewritten slip pasted to the face of the policy was the following:

"Choy Look See.

One thousand dollars as follows:

$ 250.00　On the two-story frame shingled roof building, occupied by tenants as retail stores and dwellings situate on the east corner of Beretania and River streets, Honolulu, H. I., Block 10.

$ 750.00　On the three-story frame shingled roof building, to be occupied as stores and dwellings, situate on the

east side of River street about 60 feet from the cor-
ner of Beretania and River streets, Honolulu, H. I.

$1000.00    Other insurance, Scottish Union on this one $500.
This slip is attached to and made a part of Policy
No. 513612, issued by the Royal Insurance Co. of
Liverpool."

This was signed by defendant's agent. The evidence
shows that this item No. 2 described in part "to be occu-
pied" was a new building nearing completion; that some
work (how much does not appear) was necessary to finish
the painting and windows; that the plaintiff did not understand
English and talked to the defendant's agent through an inter-
preter; that the defendant solicited the insurance and when
plaintiff called for the policy it was written and ready for deliv-
ery. It nowhere appears that the policy was translated or ex-
plained to her or that she understood its terms and conditions
other than that she thought that she had a contract of indemnity
from loss by fire on her property for a period of one year; that
17 days after the policy was delivered the property was burned
by a fire that was started by order of the Board of Health in its
crusade against the alleged epidemic of bubonic plague. It is
also a matter of common knowledge that the policy was writ-
ten at a time after it was widely circulated and generally be-
lieved that a plague epidemic was raging in Honolulu, and that
the property insured was located in the part of Honolulu known
to be the center of the infected district.

It is clear from the terms of the policy that it was not the
intention or wish of the company to insure vacant or unoccu-
pied buildings unless the fact of vacancy was made known to it,
and that the clause in the policy permitting a vacancy for ten
days was placed there to cover necessary and incidental vacancies
occurring in changing tenants or occupants. It is equally clear
in this instance by the words used in the typewritten slip that
the company knew at the time the contract was executed by the
delivery of the policy that one of the buildings insured was a
new building and had never been occupied and was then a
vacant and unoccupied building and as such it was insured.

This building could not "become vacant or unoccupied;" it was then both vacant and unoccupied.

Was it the intention of the defendant to waive this vacancy clause by writing the insurance on a vacant and unoccupied building? And was this purpose and intent evidenced and demonstrated by writing in the slip "to be occupied?" It surely did not mean that the building should be occupied within ten days, for if that was the meaning these words were useless and meaningless, for the printed clause would mean that without these added words. The majority treat these words "to be occupied" as ornamental surplusage, or as though they had not been written there. This is clearly wrong. Those are not idle words. There was some reason or purpose in writing them. What was that purpose? In determining the question resort should be had to the well established and recognized rules for the interpretation of contracts in general and insurance contracts in particular.

The safe rule for guidance in this matter was announced by the Circuit Court of Appeals, Fifth Circuit, in a recent decision as follows:

"Conditions for forfeiture in the printed forms of insurance policies now in general use have been prepared by the insurance companies with studious care, and should be strictly construed against the insurer, and liberally in favor of the insured, when invoked by an insurance company to limit or avoid liability. No intendment will be indulged to limit or avoid its liability." *Penn. Fire Ins. Co. v. Hughes,* 108 Fed. R. 497, 550.

This rule has been followed and approved by the Supreme Court of the United States. *London & Liverpool & Globe Ins. Co. v. Kearney,* 180 U. S.

If no intendment is to be indulged in favor of the company to aid or avoid its liability then it is clear that the use of the words "to be occupied" must be taken as an expression of intention to waive the vacancy clause by the defendant.

There is another reason why the defendant should be held to have waived this vacancy clause and to be estopped from claiming a forfeiture on its account. Under the law the plaintiff

2–D

is presumed to know and understand the contents of the policy although it is written and printed in a language she did not understand and it does not appear that its terms were interpreted or explained to her. Certainly the same presumption is binding on the defendant and if it did not avail itself of the rights reserved for its benefit, it should now be estopped from claiming a forfeiture. The policy provides that the company may terminate it by giving five days notice, also "if this policy shall be cancelled as hereinbefore provided, or become void or cease, the premium having been actually paid, the unearned portion shall be returned on surrender of this policy or last renewal, this company retaining the customary short rate, except when this policy is cancelled by this company by giving notice it shall retain only the *pro rata* premium." If as contended by the defendant the policy became void by reason of the building having remained unoccupied for ten days, it "became void or ceased" on the 14th day of January, six days before the fire. Was not the defendant bound under the terms of the policy to return to the plaintiff or tender to her the unearned premium and demand the surrender of the policy? It seems to me that the provision of the policy above quoted was imperative and demanded action on the part of the defendant provided it did not wish to waive a forfeiture on the grounds of vacancy and unoccupancy. Having failed to act or claim a forfeiture, although there was ample opportunity for doing so, until after the fire surely fair dealing and common honesty would demand that it be denied the privilege of now claiming the forfeiture. (*Moore v. Niagara Fire Ins. Co.*, 199 Pa. St. 49; 48 Atl. 869 at p. 872.) There was no error in the ninth instruction and the exception should be overruled.

On another proposition my opinion is at variance with that of the majority, i. e., whether or not the contract was entire or divisible. As is said in the majority opinion there is on this question "an irreconcilable conflict of authority."

There is one view of the question that might be added to those cited in the opinion, i. e., that presented by the Supreme Court of

Arkansas holding that where the consideratoin was a gross sum and several buildings were insured for separate amounts the contract was entire and not separable; that if one of the buildings were occupied and the other vacant the terms of the policy were satisfied and the insured could recover the full amount of the loss. *McOneeny v. Phoenix Ins. Co.*, 52 Ark. 257 (5 L. R. A. 744).

The Supreme Court of New York says: "Whatever the rule may be elsewhere, it is settled in this state that where insurance is made on different kinds of property, each separately valued, the contract is severable, even if but one premium is paid and the amount insured is the sum total of the valuation." *Pratt v. Ins. Co.*, 130 N. Y. 206.

The Supreme Court of Missouri said relative to the words "this entire policy shall be void," etc.: "The addition of the word 'entire' given its utmost latitude, could not avoid any more than the whole policy, hence it added nothing to the policy. Forfeitures are not favored in the law and will not be enforced if any reasonable interpretation can be made which will prevent it. No reason is given here why a forfeiture should be enforced, except the insertion of the word 'entire' into the policy. * * * Holding, then, as we do, that this was a divisible contract, it results that the legal effect is the same as if two distinct and separate policies were issued, and so reading the contract, we do not reject the word 'entire' at all, but apply it to that policy or portion of this policy which the insured has forfeited by the change of title, to which alone this clause refers, and it avoids that 'entire' policy, and not the policy in which no condition or warranty has been broken. This construction logically follows from the divisibility of the contract, and best accords with fair dealing, and the presumed intention of the parties." *Trabue v. Dwelling House Ins. Co.*, 121 Mo. 86.

The Supreme Courts of Ohio, Indiana, Kansas, Kentucky, Nebraska and Virginia agree with that of New York and Missouri, that an insurance contract like the one under consideration is severable.

*Coleman v. New Orleans Ins. Co.*, 49 Oh. St. 310; *Continental Ins. Co. v. Chew*, 11 Ind. Appeal 330; (38 N. E. 417); *German Ins. Co. v. York*, 48 Kan. 488 (29 Pac. 586); *Phoenix*

*Ins. Co. v. Lawrence*, 4 Met. (Ky.) 9; *Conn. Fire Ins. Co. v. Tilley*, 88 Va. 1024 (14 S. E. 851).

These questions are before this court for the first time and the law in this jurisdiction is to be now announced and the proper rules of interpretation to be applied to insurance policies are to be determined. The decisions of the state courts are at variance and conflicting but in the federal courts a uniform rule seems to have been adopted and followed, at least by the Circuit Court of Appeals for the Fifth Circuit, and the United States Supreme Court. These rules it seems to me are mandatory and controlling in this court. If policies are to be most strictly construed against the insurer, and forfeitures are not to be favored and no intendment are to be indulged to limit or avoid the liability of the insurer, the conclusions I have reached on the two questions discussed cannot be avoided. (1) The defendant must be held to have waived the forfeiture on account of nonoccupancy; (2) and even if it did not waive the right to claim a forfeiture on this account, the policy is severable and the vacancy of one of the buildings does not bar the right to recover the value of the other, i. e., the one that was occupied at the time of the loss.