Loehner et al., v. Home Mutual Insurance Co.

*Appeal from St. Louis Law Commissioner's Court.*

*J. W. Skinner,* for appellant, relied upon the case of *Hunt* v. *Hernandez*, 16 Mo. Rep.

*N. & S. A. Holmes,* for respondents. The judgment should be affirmed, because no motion to set aside the affirmance or for a new trial was made below, and no exception taken. 13 Mo. Rep. 4. 14 ib. 615. 7 ib. 224, 403.

LOEHNER AND WIFE, Appellants, *vs.* HOME MUTUAL INSURANCE COMPANY, Respondent.

1. Where the charter of a mutual insurance company provided that, if the assured should fail to state in his application, which was made a part of the policy, any incumbrance that might exist on the insured premises, his poli-

17 247
32a 310
32a 311
17 247
38a 586
17 247
48a 6
17 247
51a 291
17 247
121 82
57a 6
58a 213
17 247
61a 199
62a 224
17 247
66a 205
66a 292

Loehner et al., v. Home Mutual Insurance Co.

cy should be void, *it was held,* that a failure to disclose an incumbrance avoided the policy, whether the incumbrance was material to the risk or not—that the representations which were made a part of the policy became *warranties.*

2. In an action on such a policy, parol evidence would not be admissible to show that the assured mentioned the incumbrance to the agent of the company, at the time of his application, and that the agent said it was so small, it need not be reduced to writing.

3. Although a failure to disclose an incumbrance would avoid such a policy, *as to the house insured,* yet it would not avoid it *as to furniture* insured in the same policy, but separately appraised, unless the fact concealed was shown to be material to the risk.

4. In determining the materiality of a fact suppressed, with regard to the use of the premises upon which insurance is sought, only the *natural* consequences of such use are to be regarded. Thus, acts of lawless violence upon a bawdy house, by which it is burned down, are not the natural consequences of its use as a bawdy house.

5. A policy may be void in part, and valid in part, if the subject matter is capable of being separated.

6. *It seems,* that a house cannot be proved to be a brothel by common reputation.

*Appeal from St. Louis Court of Common Pleas.*

*Henry N. Hart,* for appellants. 1. The court erred in excluding parol evidence of the disclosure of the incumbrance, at the time of the application, to the agent of the defendant, and of the agent's reply. 2. The court erred in refusing appellants, 4th, 6th and 8th instructions, and in giving respondent's first instruction. 3. The description of the building, as contained in the application and policy, and therefore warranted, was fully sustained. Cowper, 785. 1 Ryan & Moo. 92. 2 N. Y. Term Rep. 222. 4. No fact material to the risk was concealed by the insured. The existence of a deed of trust did not increase or affect the risk. The authorities are numerous, that even a misrepresentation, though it be fraudulent, must also be material to the risk, to affect the right to recover. *McDowell* v. *Fraser,* Douglas, 260. 5 Taunt. 430. 1 Pet. 188. 2 ib. 25. 5 Cranch, 100. Hughes on Insurance, 501. Park on Ins. 648. 9 B. & C. 693. 4 Mass. Rep. 330. 2 Caines' Rep. 25. 1 Taunt. 343. 6 Wend. 488. 6 Cow. 673. Whether a misrepresentation is material or not, is a

question for a jury. Park on Ins. 273, 274. 4 Bos. & Pull. 151. 13 East, 47. 12 J. R. 513. 5. The plaintiffs ought at least to have recovered for the piano and household furniture. 6. The court below erred in admitting evidence of the general reputation of the house in question.

*J. Spalding* and *B. A. Hill*, for respondent. 1. The representations in the written application were warranties and conditions, on which the validity of the policy and the liability of the insurer depended. 1 Phill. on Ins. 410, chap. 9, sec. 10. Ib. 346, chap. 9, sec. 1. 6 Cow. 673. 7 Wend. 270. 6 Wend. 488. In this case, the use of the premises is stated in the application (which is a part of the policy) to be for a dwelling house, but in fact it was used as a *bawdy house* and *dram shop*, and this avoided the policy. 2 Denio, 75. 2 Wood. & Min. 472. 2. If the application is a part of the policy and therefore a warranty, then the failure to disclose the deed of trust was a breach of the warranty; if it is a mere representation, then the concealment of the deed of trust was a suppression of a fact material to the contract, and having a bearing on the terms of it. 3. Evidence of the general reputation of the house was properly admitted. It was proved *in fact* to be of a bad character; and the publicity of its character materially increased the risk. In that view it was competent. But common reputation is legal and competent proof of the fact. Dudley (S. C.) 346. 17 Cow. 467. 4. The testimony that the agent of defendant was informed as to the deed of trust was properly excluded. The policy is a written contract and merges all oral statements. The testimony that defendant knew the character of the house, at the date of the policy, was also properly excluded. The warranties of the policy covered the case, and one of these was that the house should be a *dwelling house*. This, like all warranties, was a condition precedent to recovery on the policy. Bnt this character of the house was continued down to the time of the fire, in breach of the warranty, and was evidently the cause of the fire.

SCOTT, Judge, delivered the opinion of the court.

This was an action upon a fire policy covering a dwelling house and furniture, begun by the appellants against the respondent. The insurance was effected by Jeanettine Clementine, who afterwards intermarried with the appellant, August Loehner.

Among other defences, the answer sets up that the written application for insurance, which was made a part of the policy, did not truly state the incumbrances which covered the insured premises, nor did it fully describe the character of the house sought to be insured. That there was a deed of trust upon the house and lot at the time of the application for insurance, which was not mentioned ; and that the building, though represented as a dwelling house, was used as a bawdy house and a dram shop.

The charter of the company provided, that the "insurance shall be made, in all cases, upon the representation of the assured contained in his application therefor and signed by him or his attorney, which application shall, in fairness and good faith, state all the material circumstances within his knowledge which may affect the risk." The thirteenth section of the charter also provides, that "if the assured have a lease estate on the buildings insured, or if the premises be incumbered, the policy shall be void unless the true title of the assured and the incumbrances be expressed thereon." By express words the application for insurance was made a part of the policy. In this paper is the following enquiry : What is the title and whether incumbered by mortgage or otherwise, and to what amount? The answer to this interrogatory is : "on leased ground, six years to run." When the application was made for insurance, there was a deed of trust upon the house and lot for five or six hundred dollars. The house was insured for fifteen hundred dollars, two-thirds of its appraised value. On the trial, evidence was offered to prove that the existence of this deed of trust was made known to the agent of the compa-

ny, at the time the answer to the interrogatory was given, but that he refused to write it down, saying that the amount was too trifling. This evidence was excluded, to which an exception was taken. A memorandum was endorsed on the policy to the effect, that the company would be bound by no statement made to the agent not contained in the application. By the terms of the charter, every person causing himself to be insured, becomes a member of the company. There was evidence that the building was used as a bawdy house. Evidence of reputation as to that fact was also admitted, which was excepted to. A dram shop license was taken out by the assured, though there was no proof of any tippling at the house. Wine was sold by the bottle and drank in the rooms. The bye-laws of the company classed the buildings insured, and fixed the premium of insurance according to the materials of which they were composed, the manner of their construction, the purposes for which they were used, their situation as to other buildings, and all other circumstances affecting the risk. Some trades and some kinds of merchandise were deemed hazardous, for which an increased premium was demanded, proportioned to their risk of taking fire. It does not appear that the purposes for which the buildings of the appellants were used were enumerated as increasing the risk. The company was not liable for losses occasioned by an insurrection of the citizens. The buildings and furniture were destroyed by a mob, provoked by the death of a citizen at the insured building, produced by violence. The court gave the following instructions for the plaintiff :

12. The defendant has not shown that there was any insurrection of the citizens at the time of the destruction of the property mentioned in the policy, and that is, therefore, no defence.

13. It is not necessary that the furniture and piano should have been actually in the house when they were destroyed by fire, but if in the fire they were removed by a mob to the yard and burnt, the loss is still secured by the policy.

14. The word appurtenances in the deed of trust aforesaid, does not convey the leasehold in trust of the plaintiff.

15. The word appurtenances in the deed of trust aforesaid, does not convey the buildings upon the ground in question, nor make an incumbrance, within the meaning of the policy.

16. But a conveyance of the lot on which the building was situated, was a conveyance of the building and an incumbrance within the meaning of the policy.

17. The defendant here has shown no compliance with the requirements of the policy in regard to the assessments and notice thereof to the plaintiff, Jeanettine.

And the court refused the following, asked by the plaintiff:

1. The fact that the plaintiff sold wines at the house insured, after the execution of the policy, is no violation or breach of the warranties of the policy.

2. If the jury believe from the evidence, that the policy makes no distinction in the rate of premium between a dwelling house and a bawdy house, and none between a dwelling house where wines are sold and where they are not, neither being classed in the policy as more hazardous than the other, the jury will find for the plaintiffs, so far as such objections are concerned.

3. Unless the jury believe from the evidence, that the plaintiff, Jeanettine, agreed in the policy or was forbidden by it to sell wines at the house insured, it is no breach of the same, and cannot prevent the recovery of the plaintiffs.

4. The deed of trust offered in evidence conveys the land or ground on which the buildings insured are situated, and if the jury believe from the evidence that she duly paid lease on the same, the deed is void as a conveyance of the lease.

5. The household furniture and piano are not insured by the terms of the policy in any particular house; if, therefore, the jury believe from the evidence that the household furniture and piano mentioned in the policy and application, were destroyed by fire, they will find, as to such furniture and piano, for the plaintiffs, notwithstanding they may also believe from the evi-.

dence that said furniture and piano were, at the time of such destruction by fire, in a bawdy house and a house where wines were sold.

6. The deed of trust offered in evidence by the defendant, constitutes no incumbrance on the property mentioned in the policy.

7. A bawdy house may be a dwelling house, and if the jury believe from the evidence that the house insured in the policy was a dwelling house, they will find for the plaintiffs, although they may also believe from the evidence that it was a bawdy house.

8. The deed of trust offered in evidence by the defendant, to Alexander Hare, is no incumbrance upon the leasehold interest of the plaintiff or the buildings mentioned in the policy, and no breach of the warranty in the policy in regard to incumbrances.

9. An insurrection of the citizens is a violent movement against the government or civil authority, on the part of the citizens.

10. A mere mob, whose only purpose is to destroy the premises and property of the plaintiff, Jeanettine, and drive her away, is not an insurrection of the citizens, within the meaning of the policy.

11. The piano mentioned in the policy is not insured in any particular house ; if, therefore, the jury believe from the evidence that it was destroyed by fire, although in a house which was used as a bawdy house, and in which wines are sold, they will find for plaintiffs as to such piano.

The following instructions were given for the defendant :

1. If the jury believe from the evidence that, at the time the application for insurance was made by the said Jeanettine Clementine, she had a leasehold estate, or any estate less than a fee simple in said land on which the buildings insured were erected, and that, at the time the policy sued on was issued, the said Clementine's interest in said land was incumbered by deed of trust or otherwise, and that such incumbrance was not

17—VOL. XVII.

specified and set out in her written application for said insurance, then the jury are not authorized to find any amount of loss or damage for the buildings insured in said policy, and the policy on said building is void by reason of the failure of said insured to specify the said incumbrance.

4. The application of the said Jeanettine Clementine, and all the statements therein, are a part of the policy sued on, and are a warranty as to the matters therein stated, and any mistake or omission in the representation of the risk, whether wilful or accidental, if material to the risk insured, avoids the policy.

5. A warranty is in the nature of a condition precedent, and must be fulfilled by the insured before performance can be enforced against the insurer.

And the following were refused the defendant:

2. If the jury believe from the evidence that, at the time the application for insurance was made in this case, the said Jeanettine Clementine described the building insured, and containing the property insured, as a *dwelling house*, and it was so described in the written application for insurance, and that, in fact, the said Jeanettine, at the time of the loss of said property insured, kept in said premises a *bawdy house* or house of ill-fame, commonly known as a whore house, and that the risk of fire upon a *bawdy house* or whore house is greater than the risk of fire upon a dwelling house, then the jury will find for the defendant.

3. If the jury believe from the evidence that, at the time the application for insurance was made in this case, the said Jeannetine Clementine caused the building insured, and containing the property insured, to be described as a dwelling house in her written application for insurance, and that, in fact, the said Jeannetine, at the time of the loss of said property insured, kept in said premises a tippling house or place for the sale of wine or spirituous liquors, under a license therefor, then the jury will find for the defendant.

6. If the jury believe from the evidence that, at and before

the time of said loss, the said Jeannetine Clementine carried on, in said insured premises, the business of keeping a bawdy house or whore house, and that such a house is more exposed to the risk of fire than a dwelling house, the jury will find for the defendant.

7. If the jury believe from the evidence, that the insured did not truly describe the use and purpose for which her said house was occupied, in her written application, and that the said premises were occupied as a bawdy house, house of ill-fame or dram-shop, or whore house, by the insured and her servants and agents, then the jury will find for defendant.

The court gave the following instruction:

If the jury believe from the evidence, that the house described in the policy and application was not occupied as a dwelling house, but for other purposes, enhancing the risk by fire, then the plaintiffs cannot recover, and it is for the jury to determine whether there was a material risk concealed from the company in Jeannetine Clementine's application for said insurance. They will take into consideration all the evidence with regard to the use and occupation of the house, and if they believe from the evidence, that there was a material concealment of the risk, they will find for the defendant.

1. Whatever may be the law, as to the duty of one applying for insurance, in disclosing all facts not known to the insurer, and which he cannot reasonably be presumed to know, that show the nature and extent of the risk, and which would enhance the premium or induce a refusal to undertake the insurance, yet where rules are adopted respecting representations, if they are made sufficiently public, the assured is bound to take notice of them and to make a true and full representation of the circumstances which he is required by such rules to disclose. The representations made in this case were respecting the buildings insured, and being incorporated into and made part of the policy, by express terms, became warranties. A warranty is a part of the contract, and the matter of it must be such as it is represented to be, otherwise there can be no recovery on the poli-

cy. It is like a condition precedent. The materiality or im-materiality of the fact warranted signifies nothing. 3 Dow, 262. A representation, being no part of the policy, must be complied with, if material; if immaterial, that immateriality may be enquired into and shown.

The thirteenth section of the charter provides that, if the assured has a lease estate in the buildings insured, or, if the premises be incumbered, the policy shall be void, unless the true title of the assured and the incumbrances be expressed thereon. There is no question but that the buildings insured were a leasehold estate, and that there was an incumbrance on them at the date of the insurance. This incumbrance was not expressed in the application for insurance, which was made a part of the policy. The application contains an interrogatory, whose aim was to ascertain whether there was an incumbrance on the premises proposed to be insured, but no response is made to it; leaving room for the inference that none existed. The charter then made the policy void.

2. The plaintiffs were not at liberty to obviate this objection, by showing that the agent of the company was informed of the existence of an incumbrance at the time of the application, but that he refused to write down the answer, saying the in-cumbrance was too trifling. Independently of the statute, which required the incumbrance to be expressed in the policy at the peril of its being void, there was a memorandum endorsed on it, which made known that the company would be bound by no statement made to the agent not contained in the application. The facts being as represented, they could not give the plain-tiffs a right of action on the policy in the teeth of the statute and against the terms of the contract. If the conduct of the agent was such as is alleged, he was guilty of a gross fraud, as is shown by his setting up this defence, which would avoid the policy and give a right of action for the recovery of the premium, but could not, for the reasons given, entitle the plain-tiffs to an action on the policy.

3. With respect to the furniture and piano, although they

may be regarded as being insured in the building covered by the insurance, yet, because the statute arbitrarily avoids the policy, as to the building, for the want of the disclosure of a fact which did not at all affect the risk of the insurer, we cannot come to the conclusion that the policy was likewise void as to the furniture and piano. The validity of the policy, as to them, will depend upon the answer to the question, whether the concealment or suppression of the facts that the house was incumbered by a deed of trust, was used as a bawdy house, and that wines were sold and drank, as stated in the evidence, did materially enhance the risk of the insurers, or would a knowledge of them have induced a refusal to insure. In relation to this matter, the doctrine of warranties in policies of insurance has no application, but the ground on which the invalidity of the contract of insurance is based, is a concealment or suppression of facts material to the risk. This is a question for the jury, on the weighing of which they will not be controlled by the legislative declaration that the policy should be void as to the building, for the reason that an existing incumbrance was not expressed on its face. For, although the statute declares that the policy shall be void as to the building, for such cause, and will not permit an enquiry whether the fact suppressed was material or not, yet, as to the furniture and piano, the case stands on the general law of insurance.

4. In determining the question of the materiality of the fact suppressed, only the natural consequences of the use to which the house was applied are to be regarded; and if the use to which it was applied enhanced the risk, and the destruction by fire was the natural consequence of such use, the insurers are not liable. But acts of lawless violence were not justified by the use to which the house was applied, nor can they be regarded as a natural consequence of the conduct of the insured, with regard to the building. In enquiring into the materiality of the facts suppressed, it is of importance to consider that, by the bye-laws of the company, all buildings which were to be insured, were classed, and the premiums on them proportioned to the risk incurred; that the trades and kinds of mer-

chandise were enumerated, for which an increased premium was demanded, and that none of the facts insisted on in the defence were mentioned in the bye-laws as affecting the risk.

5. It may be objected that, the policy being void as to the buildings, by virtue of a statute, it must be void as to the whole. However this may be in some cases, it has been held, that the invalidity of part of a deed, even by virtue of a statute, does not destroy the whole; and the remainder, being legal and distinct, and capable of separation from the illegal provision, has been allowed to stand, *there being no express words in the act to render the whole void.* In the present case, the part of the contract avoided by statute, is easily separated from that portion of it relating to the furniture. The house and furniture were separately appraised, and the proportion of the premium due for each may be easily ascertained. Chitty on Con. 692.

6. It seems, that a house cannot be proved to be a brothel by reputation. Testimony as to the reputation of the house, is inadmissible for the purpose of proving that it was a house of ill-fame. Such testimony would be obnoxious to the objection, that it is mere hearsay. 17 Conn. 472. To the same effect is the case of the *Commonwealth* v. *Stewart*, 1 Serg. & Rawle, 345.

The other Judges concurring, the judgment will be reversed and the cause remanded.