TRABUE *et al.* v. DWELLING HOUSE INSURANCE COMPANY, *Appellant.*

Division Two, March 13, 1894.

| 121 | 75 |
| 121 | 88 |
| 121 | 75 |
| 61a | 199 |
| 121 | 75 |
| 69a | 321 |
| 70a | 17 |
| 121 | 75 |
| d150 | 373 |

1. **Insurance Against Fire**: CHANGE OF TITLE: FORFEITURE. A condition in a fire insurance policy avoiding it "if any change other than by death of the insured take place in the interest, title or pos-session of the subject of the insurance" is violated by a partition proceeding setting the property apart for life to the widow of the insured.

2. ———: SEVERABLE POLICY. A policy insuring building and con-tents separately is not avoided as to the latter by a forfeiture of the-insurance on the realty caused by a change in the title thereto though it provides that the "entire" policy shall be avoided by any change in the title of the subject of the insurance.

*Certified from St. Louis Court of Appeals.*

REVERSED AND REMANDED.

*Joshua F. Hicklin* and *Ed. E. Yates* for appellant..

(1) Under the condition: "This entire policy shall be void, if any change [other than by the death of the insured] take place in the interest, title or pos-sesssion of the subject of insurance, whether by legal process or judgment or by voluntary act of the insured, or otherwise," the will of Anthony E. Trabue and his subsequent death avoided the policy. *Sherwood v. Agricultural Co.*, 73 N. Y. 447; *Burbank v. Rockingham*

*Co.*, 24 N. H. 540; *Hine v. Woolworth*, 95 N. Y. 93. (2) The partitioning of the realty after the death of the assured by the voluntary act of the parties in interest, worked a change in title, interest or possession of the subject of insurance. *Dreher v. Ætna Co.*, 18 Mo. 128; *Card v. Phœnix Co.*, 4 Mo. App. 424; *Barnes v. Union Mutual*, 51 Me. 110; *Keeler v. Niagara Co.*, 84 Am. Dec. (Wis.) 716. (3) It will not do to say that Mrs. Trabue got by partition what she would have received had her husband died intestate. This is not the case, and, if it were, would make no difference. The case is to be tried by its own facts, not what might have been. The fact is, she took by the will; ratified the marriage settlement; holds no homestead, but a conditional estate that may be defeated by her marriage. The antenuptial contract was entered into in Indiana, hence must be interpreted by Indiana law. 14 Am. and Eng. Encyclopedia of Law, p. 552, and authorities cited. If it is valid there it is valid everywhere. *Idem*, page 551. An antenuptial settlement where there are reciprocal relinquishments is binding under the Indiana decisions. *Daubenspeck v. Biggs*, 71 Ind. 255; *McNutt v. McNutt*, 116 Ind. 545. (4) The contract is an entirety. "This entire policy shall be void," is its language. Can this mean part of it? Rapalje's Law Dict. 446; *Barnett v. Ins. Co.*, 73 Mo. 364; *Crook v. Ins. Co.*, 38 Mo. App. 582.

*Reuben F. Roy* and *Geo. A. Mahan* for respondents.

(1) The will of Anthony E. Trabue did not operate as a change of title so as to avoid the policy. Devise and descent are both changes of title by death; and both are within the plain purview of the contract. Judge WOERNER says that a will becomes operative, not by the probate thereof, nor by the act of the executor

in qualifying, which are said to be mere ceremonies of authentication, but by the death of the testator. 1 Woerner's Administrative Law, page 383, sec. 172; 2 Redfield on Wills [3 Ed.], p. 10, sec. 2. But all doubt on this point is set at rest by the language of the contract, which provides that the defendant shall "make good unto the assured or his legal representatives, all such immediate loss or damage by fire or lightning," etc. Now, if a man dies intestate, his heir or administrator is his representative, and if he dies testate his representative is his devisee or executor, as the case may be. 2 Bouvier's Law Dictionary, p. 464; *Richardson v. Ins. Co.*, 13 S. W. Rep. 1. (2) The marriage contract read in evidence by defendant is a nullity. The uncontradicted testimony of Christiana Trabue is that she had no property when she was married and never had any prior to her said husband's death, except two city lots of little value, given to her by said Anthony E. Trabue, her husband, and said pretended marriage contract did not constitute either a statutory or equitable jointure, and was not sufficient to bar dower or homestead. R. S. 1889, sec. 4529; *Logan v. Phelps*, 18 Mo. 22; *Mowser v. Mowser*, 87 Mo. 437; *Farris v. Coleman*, 103 Mo. 352. Counsel for appellant realizing that the marriage contract is void under the Missouri cases, call in aid the decisions of the Indiana courts, as the *lex loci contractus*. Foreign laws must be proved as facts. But no evidence was introduced at the trial as to what the Indiana law was on the subject. In the absence of such proof, our courts presume that the common law is in force in Indiana, and that the common law of Indiana is the same as ours. *Myer v. McCabe*, 73 Mo. 236; *Benne v. Schnecko*, 100 Mo. 250; *State v. Clay*, 100 Mo. 571; *Conrad v. Fisher*, 37 Mo. App. 352. The common law of a sister state is presumed to be the same as ours, and their statutes must

be proved. *White v. Chaney*, 20 Mo. App. 389; *Bergner v. Railroad*, 13 Mo. App. 499. (3) These facts show that on the death of Anthony E. Trabue, the dwelling house covered by the policy passed as a home-stead to the plaintiffs, Christiana Trabue and the minor child, Mary G. Trabue, that is to say, during the natural life of said Christiana and the minority of said Mary G. The marriage contract did not affect the homestead, for the reason that it was void as above shown, and the husband could not by his will deprive his widow or minor child of the homestead, or put them to their election. *Kaes v. Gross*, 92 Mo. 647; *Rockhey v. Rockhey*, 97 Mo. 76. The law in force at the time of Trabue's death (*i. e.* in 1889) controls the homestead rights. *Burgess v. Bowles*, 99 Mo. 543. (4) The legal effect of the partition proceeding was that the remainder in said one hundred and ninety acres, including said house, remained vested in said four children, under the provisions of said will, as tenants in common, to take effect in possession on the expiration of the widow's interest. We claim: *First.* That, so far as the homestead was concerned, it remained just as though no partition proceedings were had. The widow was not estopped from claiming said homestead by the partition. *Murphy v. Defrance*, 101 Mo. 151; *Gragg v. Gragg*, 65 Mo. 343; *Seek v. Haynes*, 68 Mo. 13. *Second.* Even if he decided that the homestead estate was extinguished and an estate during her widowhood created in its place, still it was not such a change as would avoid the policy. The widow and children, each and all, retained an insurable interest in the house, substantially the same interest as before, and no stranger was introduced into the title. *Ins Co. v. Peck*, 24 N. E. Rep. (Ill.) 538; *Dreher v. Ins. Co.*, 18 Mo. 128; *Card v. Ins. Co.*, 4 Mo. App. 424. It is not pretended that there was any change in the title of the

personal property except by the death of the insured, and as it was separately insured for $250 the plaintiff should recover that amount with interest, notwithstanding any avoidance of the policy as to the house. *Loehner v. Ins. Co.*, 17 Mo. 247; *Crook v. Ins. Co.*, 38 Mo. App. 582; *Koontz v. Ins. Co.*, 42 Mo. 126; *Ins. Co. v. Barnett*, 73 Mo. 364.

GANTT, P. J.—The facts alleged in the petition and supported by the evidence and which are not controverted by the parties in this suit, are as follows:   The defendant company by the policy of insurance on which this suit is based, insured Anthony E. Trabue against loss by fire or lightning for a term of five years, beginning at noon on the twentieth day of April, 1888, in the sum of $800 on the dwelling house occupied at the time by said Trabue, and *the sum of $250 on the contents of said dwelling house*, and also $200 on other property which escaped the fire.   The insured was the owner of the insured property.

On the first day of February, 1889, said insured died at his place of residence, which was said dwelling house, in Ralls county, Missouri.   At the time of his death there was living with him at the said dwelling house his wife, the plaintiff, Christiana Trabue, and three of his children, plaintiffs herein, to wit:   Taylor J. Trabue, Kitty R. Trabue and Mary G. Trabue. The insured left a will, by which he devised to his wife, Christiana Trabue, one-third of his estate during her widowhood, and the residue and remainder he devised to his four children, his only descendants, plaintiffs herein, in equal parts, with the provision that the portion willed to one child, Taylor J. Trabue, should go to him and his bodily heirs.   The plaintiff, Christiana Trabue, was appointed executrix and was qualified as such.   The plaintiff, Mary G. Trabue, is a

minor, and was a member of her father's family at the time of his death. The property was destroyed by fire October 16, 1890. At the time of the loss the plaintiff, Christiana Trabue, was occupying the house as a dwelling house. Three of her children, the plaintiffs Taylor J. Trabue, Kitty R. Trabue and Mary G. Trabue, were living with her as a part of her family.

Prior to said loss, the plaintiffs, in an *ex parte* proceeding, in the Ralls circuit court, had the real estate devised to them by said Trabue partitioned among them, and that portion on which said dwelling house stood, including said house, was set off to said Christiana Trabue during her natural life or widowhood. Notice and proof of loss were given, and the property was worth the amount claimed. The personal property insured was in said house in the possession of Christiana Trabue at the time of the loss.

In March, 1864, just before their marriage, said Anthony E. Trabue and Christiana Trabue entered into a marriage contract, by which it was agreed that neither should have or inherit any interest in the property of the other, and it was provided that the said Christiana Trabue should not receive any dower or inherit any property of said Anthony E. Trabue, except as he should give or devise to her.

The policy contained this clause: "This entire policy shall be void if any change (other than by death of the insured) take place in the interest, title, or possession of the subject of insurance, whether by legal possession or judgment or by voluntary act of the insured or otherwise."

The circuit court gave judgment for plaintiffs for the whole amount of the policy and defendant appealed to the St. Louis court of appeals, where the judgment was reversed without remanding, but the decision being in conflict with the decision of the Kansas City court

of appeals in *Crook v. Phœnix Insurance Company*, 38
Mo. App. 582, the cause was certified to this court
under the mandate of section 6 of the constitutional
amendment of 1884.

I.   The St. Louis court of appeals held the policy
was avoided as to the dwelling house by the transfer of
the title thereto by the partition proceedings, and judg-
ment therein, between the devisees of Anthony E.
Trabue, the loss having occurred after that decree.
The court waived all discussion of the effect of the
marriage contract, and whether the will alone which
became operative upon his death worked a change of
property "other than by death of the insured," and
placed their judgment upon the view that the partition
proceedings had that effect.

In that conclusion we concur.  A partition of
property, whether by deeds *inter sese*, or by the judg-
ment or decree of court, effects "the change of interest,
title, or possession," against which the policy provided.
*Sherwood v. Ins. Co.*, 73 N. Y. 447; *Burbank v. Ins.
Co.*, 24 N. H. 550; *Hine v. Woolworth*, 93 N. Y. 75;
*Barnes v. Ins. Co.*, 51 Me. 110; s. c., 81 Am. Dec. 562;
*Finley v. Ins. Co.*, 30 Pa. St. 311; s. c., 72 Am. Dec.
705; *Dreher v. Ins. Co.*, 18 Mo. 128.

II.   As this judgment on its face only affected the
real estate covered by said policy, the plaintiffs insist
they are entitled to recover the insurance on the per-
sonal property, as to which there was no breach of any
condition in the policy; but the defendant insists that
by the use of the terms "entire policy" in said clause
the whole policy is avoided for a breach in any respect.
If defendant's contention be correct it is a most appro-
priate subject for legislative correction at the earliest
opportunity.   But is this clause properly construed by
the court of appeals?

VOL. 121—6

As early as the case of *Loehner v. Insurance Co.*, 17 Mo. 247, it was held by this court that where a firm obtained insurance upon a storehouse and a stock of goods therein, in separate amounts, and the insurance on the house was avoided because the interest in the house was incorrectly described in the application, the policy was not vitiated as to the goods. In other words, this court then held that such a contract was divisible. Afterwards, in *Koontz v. Savings and Ins. Co.*, 42 Mo. 126, the action was on a policy by defendant on a livery stable, the live stock and personal property, each separately stated and appraised. In that case Judge WAGNER reviewed the cases and admitted there was a conflict between the decisions but held that *Loehner v. Home Ins. Co.*, 17 Mo. 247, was a binding authority and "cheerfully followed it because this court regarded it as in consonance with justice." These two cases have never been overruled or their authority questioned until the decision of *Ins. Co. v. Barnett* in 73 Mo. 364.

The very able and learned judge of the St. Louis court of appeals, who prepared the opinion in *Holloway v. Ins. Co.*, 48 Mo. App. 1, considered the *American Ins. Co. v. Barnett*, as the controlling decision, and followed it, as required by the constitution of this court; and in this case, THOMPSON, Judge, treated the point as decided by the *Holloway case* and as clear of all difficulty. Since then the Kansas City court of appeals in *Shoup v. Ins. Co.*, 51 Mo. App. 286, has followed Judge ROMBAUER's decision in the *Holloway case*. So that it becomes very important to determine the effect of the *Barnett case*.

An examination of that case will show that the remarks of the learned judge who delivered that opinion were entirely "*obiter dictum*," as to this question of the divisibility of the contract. He says "if such a

stipulation was in fact in the policy," the plaintiff
would be entitled to. the full relief prayed.   So that it
is clear no such clause was before the court, and while
his opinion is entitled to respect, on the supposed case,
it is equally clear that the court did not overrule the
decision in *Loehner's case.* or *Koontz's case,* but, on the
contrary, on the only point that was in fact before the
court, those cases were treated as binding authority.
Our conclusion is that so much of Judge NORTON's
opinion as referred to the entirety of the policy in the
*Barnett case,* was *obiter* and did not overrule the *Koontz*
and *Loehner cases.*

But, independent of the binding authority of those
cases, we think they were correctly decided.   In both
of those cases, "the policy" was to be void, upon cer-
tain conditions.   Here it is said "the entire policy"
shall be avoided.   "The policy" includes all and every
part of it, and the insertion of the word "entire" can
not add anything more to it, so that this mere verbal
addition has not, in our opinion, changed the law of
the case.

The cases cited by Judge NORTON from Pennsylva-
nia, Maine, Maryland and other states are based upon
the case of *Friesmuth v. Ins. Co.,* 10 Cush. 587.   By the
laws of Massachusetts the policy in that case was a lien
on the interest of the assured in both the building and
personal property insured.   In holding that such a
policy was an indivisible contract, Judge BIGELOW put
it upon the ground that the consideration was regarded
as an entirety for which the deposit note was given and
the liability of the assured to assessments on that
amount in case of losses.   He said:   "They (the com-
pany) had the right to look to their lien on each and all
of the different kinds of property insured by them for
the security of the whole amount of the deposit note;"
and so that policy said on its face.   Upon the facts of

that case no question can be made on its correctness. The lien was given on all the property. A false representation affected all of the lien. On the same principle stand the subsequent cases of *Brown v. Ins. Co.*, 11 Cush. 281; *Gould v. Ins. Co.*, 47 Me. 403. In *Gottsman v. Ins. Co.*, 56 Pa. St. 210, Judge THOMPSON cites the *Friesmuth case*, and those based on that case without, however, adverting to the statutory lien.

That other courts have adopted this construction of the entirety of the contract is not questioned, but, entertaining for them as we do all due respect, we see no reason for departing from our own decisions when they are based upon what appears to us the soundest reason. When one applies for distinct and separate insurance, a part on real estate, a part on personal property, he can require two separate policies. The accidental circumstance that for convenience merely they are included in one policy does not merge them into one. If the goods alone were destroyed, the terms of the policy *applying to them alone* could be made the basis of recovery. The supposed danger of making a contract for the parties is not in the case. The question is whether, according to legal principles, the contract made is severable, or entire. There is nothing to indicate the company would not have assumed the risk on the house without taking one also on the goods, nor *vice versa.* The contract as to each admitted of being separately executed as to the separate subjects of insurance. The application is for separate insurance, and it is kept distinct in the policy.

Nor are the cases of *Koontz* and *Loehner, supra*, unsupported by authorities in other states. In *Ins. Co. v. Lawrence*, 4 Metc. (Ky.) 9, the supreme court of Kentucky held that when insurance was obtained upon a storehouse and stock of goods, in an action for loss on the goods, the fact that the insurance on the house

was void because the interest on the insured was incorrectly stated, did not vitiate the policy on the goods, but it would be treated as a separate policy, citing *Loehner v. Ins. Co.*, 17 Mo. 247, with approval. In *Clark v. Ins. Co.*, 6 Cush. 342, a policy made separate insurance on two buildings, with a clause declaring it void if the insured should alienate the property; it was held that alienation of one building did not avoid it as to the other. In *Merrill v. Ins. Co.*, 73 N. Y. 452, the policy was upon several separate and distinct classes and species of property, each, as in the case at bar, separately valued; the sum total of the valuation was insured for a premium · in gross; the contract was held severable.· Judge FOLGER reviewed all the cases, including the two cases of *Loehner* and *Koontz, supra,* decided by this court, and in a most satisfactory manner sustained the reasoning of those cases, upon the analogies of the law, and the proper construction of contract. *Johnson v. Johnson*, 3 B. & P. 162; *Mayfield v. Wadsley*, 3 B. & C. 357; *Goring v. Ins. Co.*, 10 Ont. 236; *Ins. Co. v. Walsh*, 54 Ill. 164; *Date v. Ins. Co.*, 14 Upper Can. Com. P. 548; *Deidericks v. Ins. Co.*, 10 Johns. 233; *Trench v. Ins. Co.*, 7 Hill. 122; *Phillips v. Ins. Co.*, 46 Upper Can. 334; *Heacock v. Ins. Co.*, referred to in 73 N. Y.· 452; *Moore v. Virginia Fire and Marine Ins. Co.*, 18 Gratt. 508.

The *Merrill case* came under review in 1886 in *Schuster v. Ins. Co.*, 102 N. Y. 260 and was unanimously sustained. In 1891, in *Pratt v. Ins. Co.*, 130 N. Y. 206, the question again recurring, the court of appeals says: "Whatever the rule may be elsewhere, it is settled in this state that where insurance is made on different kinds of property, each separately valued, the contract is severable, even if but one premium is paid and the amount insured is the sum total of the valuations." See, also, *Smith v. Ins. Co.*, 14 N. Y. St.

Rep. 106; *Woodward v. Ins. Co.*, 32 Hun, 365; *Ins. Co. v. Fairbank*, 49 N. W. Rep. 711.

In the very recent case of *Coleman v. Ins. Co.*, 31 N. E. Rep. 279, the supreme court of Ohio aligns itself in this conflict of authority on the side taken by this court in *Loehner v. Ins. Co.*, 17 Mo., *supra*, and *Koontz v. Ins. Co.*, 42 Mo., *supra*, holding such contracts as this severable. *Vide*, also, *Rogers v. Ins. Co.*, 121 Ind. 570; *Ins. Co. v. Spankneble*, 52 Ill. 53; *Quarrier v. Ins. Co.*, 10 W. Va. 530; *Ins. Co. v. Schreck*, 27 Neb. 527.

When this contract was made, then, it was the settled rule of decision in this state that such a contract as this was divisible or severable, although the policy had a clause which would avoid the whole contract. The addition of the word "entire," given its utmost latitude, could not avoid any more than the whole policy, hence it added nothing to the policy. Forfeitures are not favored in the law and will not be enforced if any reasonable interpretation can be made which will prevent one. No reason is given here why a forfeiture should be enforced, except the insertion of the word "entire" into the policy. The risk was not increased. The premiums were taken, kept and enjoyed for insurance on the personal property. The policy as to the house was avoided doubtless through the ignorance of the insured, but they have violated no condition as to this personal property. Holding, then, as we do, that this was a divisible contract, it results that the legal effect is the same as if two distinct and separate policies were issued, and so reading the contract, we do not reject the word "entire" at all, but apply it to that policy or portion of this policy which the insured has forfeited by the change of title, to which alone this clause refers, and it avoids that "entire" policy, and not the policy in which no condi-

tion, or warranty has been broken. This construction logically follows from the divisibility of the contract, and best accords with fair dealing, and the presumed intention of the parties.

Our conclusion is that neither the law, nor common honesty will permit the defendant to avoid paying the loss as to this personal property. The judgment of the St. Louis court of appeals is affirmed in so far as it adjudged the policy on the dwelling house avoided, and reversed in so far as it avoids the insurance on the personal property, and the cause is remanded to that court with directions to affirm the judgment of the circuit court to the amount of $250, the amount of insurance on personal property and piano, and reverse it as to the remainder of said judgment. The costs of the appeal to this court are adjudged to plaintiffs, and the costs of the appeal to the St. Louis court of appeals are adjudged to defendant, as also the costs in the circuit court, after the offer of judgment was made, the other costs to plaintiff. All of this division concur.