CONSUMER'S MONEY ORDER CORP. OF
AMERICA, INC. (MISSOURI),
Plaintiff-Respondent,

v.

NEW HAMPSHIRE INSURANCE COM-
PANY, Defendant-Appellant.

No. 31665.

St. Louis Court of Appeals.

Missouri.

Dec. 15, 1964.

Motion for Rehearing or to Transfer to
Supreme Court Denied Jan. 11, 1965.

Application to Transfer Denied
March 8, 1965.

Strubinger, Tudor, Tombrink & Wion, Edward P. Burke, Lawrence O. Willbrand, St. Louis, for defendant-appellant.

Ackerman & Schiller, Paxton H. Ackerman, Theodore F. Schwartz, Clayton, for plaintiff-respondent.

ANDERSON, Judge.

This is a suit on a policy of insurance issued by defendant, New Hampshire Insurance Company, insuring plaintiff among other things, against loss by robbery. The case was tried to a jury, and resulted in a verdict for plaintiff for the principal amount sued for with interest together with an attorney's fee and penalty under the vexatious refusal to pay statute. From the judgment on this verdict, defendant has appealed.

The policy was issued on August 31, 1961, for the term of one year. It insured the plaintiff against loss of money, securities and other property by robbery or an attempt thereat, within two premises specified in the policy. There was also a provision whereby the defendant agreed, "To pay for loss of money, securities and other property by robbery or attempt thereat outside the premises while being conveyed by a messenger." "Messenger" was defined as including any employee who was in the regular service of and duly authorized by the insured to have the care and custody of the insured property outside the premises.

The definition of robbery, so far as material to this case was defined as the taking of insured property by violence inflicted upon a messenger or a custodian, or by putting him in fear of violence.

There was an endorsement on the policy extending the coverage which was as follows:

"It is agreed that the Money and Securities Broad Form protection granted on the Schedule of Locations Endorsement No. 2 shall include property in unattended automobiles subject to the condition of Endorsement No. 1 Babaco Alarm Warranty."

The Babaco Alarm Warranty provided for in Endorsement No. 1 was as follows:

"It is a condition of this insurance that all automobiles used by the messengers in the performance of their duties are fitted with a Babaco Alarm and that such alarms are maintained in good order during the entire period of this insurance and shall be set 'on' at all times."

The plaintiff, Consumer's Money Order Corp. of America, Inc., was engaged in the business of selling money orders through retail outlets. Harold Hausdorf was, at the time the events transpired which gave rise to this lawsuit, a regular employee of plaintiff. His duties were to collect money for plaintiff from various locations within the city of St. Louis. In the performance of his duties, Hausdorf used his own auto-

mobile. This automobile was equipped with a Babaco Alarm system, which plaintiff had installed. This system is so constructed that it could be turned on and off by inserting a key in a lock located on the outside of the trunk at the rear of the car. When the mechanism is turned to the "on" position a siren will sound whenever a door of the automobile is opened or if the hood of the car is lifted. Hausdorf testified that it was his practice to turn on the system whenever he got out of the car to make a collection. He further testified that if he opened the door to get into the car when the lock was turned to the "on" position, the siren would sound, and would continue until he would get out of the car and by the use of the key, turn the lock to the off position. In other words, under his testimony, if the system was turned on at all times he would be driving the car at all times with the siren sounding.

The loss for which plaintiff brought this suit occurred on January 6, 1962, when Hausdorf was making collections for plaintiff. Snow fell that day, and according to the testimony, the weather was miserable. The temperature was below freezing. At about 4:30 p. m., Hausdorf discovered that the lock of the alarm system was frozen and for that reason he could not insert the key into the lock to turn on the system. At that time, he was making a collection at a pharmacy located at Taylor and Easton. Hausdorf continued to make collections even though he knew the alarm system could not be turned on. He did not take his car to the Babaco service department as he normally would under such circumstances, because it was Saturday afternoon and such service was not available.

At about 6:00 p. m., Hausdorf arrived in front of a liquor store located at Glasgow and Montgomery. He parked his car in front of the store, got out and went into the store where he made a collection. He did not turn on the alarm system because the lock was frozen, and he could not insert the key into it. At that time

there was about $18,000 in the car which he had collected for plaintiff from various locations within the city.

After Hausdorf made the collection at the liquor store he returned to his car, but was unable to start its motor. He then alighted and raised the hood of the car to ascertain the cause of the failure of the motor to start. While his head was under the hood, a man approached and inquired if he was having trouble. He raised up to a position where he was standing in front of the car. The man who accosted him was on the sidewalk. This man then displayed a gun and demanded money saying it was a holdup. Hausdorf gave him his personal funds thinking that would satisfy him, but the man demanded the rest of it which was in the inside pocket of his jacket, and which was money he had collected for plaintiff. Hausdorf complied with this demand. The holdup man told Hausdorf that he was being watched from across the street and for him not to move for fifteen minutes or he would be shot. The holdup man then fled. Hausdorf gave chase firing three shots, but the robber got away. Hausdorf then returned to his car after shouting to owner of the liquor store to call the police. The police arrived shortly thereafter and Hausdorf reported to them what had happened. The robber took none of the money that was in the automobile. The money taken from Hausdorf amounted to $2,318.76. Appellant concedes that this was the correct amount of the loss.

Hausdorf further testified that he later made an investigation to ascertain why his car would not start, and found there was a missing coil that was responsible.

Appellant's first point is that the court erred in overruling defendant's motion for a directed verdict, for the reason that plaintiff's own evidence shows a failure by plaintiff to comply with the Babaco Alarm Warranty, which failure suspended the insurance for the period of noncompliance during which time the robbery occurred.

Respondent contends that a proper interpretation of the policy contract is that the terms of the Alarm Warranty were not to apply to robberies outside the car.

It is further contended that the warranty in question must be read in connection with the endorsement affording coverage of plaintiff's property in unattended automobiles, and when so construed means that the alarm system must be on when the automobile is unattended; that "on at all times" means at all times where there is insurance coverage.

In this case the policy afforded coverage at two locations, namely, at 1322 North Market Street in St. Louis, with a limit of liability of $30,000, and at the V. F. W. Bldg. in Kansas City for $10,000. It also covered robberies of four messengers from the St. Louis address for $20,000, and two messengers at plaintiff's Kansas City address for $10,000. By the endorsement heretofore mentioned coverage was extended to property in unattended automobiles, subject to the conditions of the Babaco Warranty which required the alarm to be maintained in good order and be set "on" at all times.

■ It is a general rule of law that a policy of insurance purporting to be entire may be divisible and severable, where it covers several different kinds of risks or property at different locations. The question rests upon the intention of the parties, which intent must be deducible from the stipulations in the contract and the application of the rules governing the ascertainment of that intent. If the character of the risks assumed is such that what affects the risk on one item does not affect the risk on the others the parties must have intended that the policy should be regarded as severable and divisible, and any warranty the breach of which could only affect one item will be deemed directed to that item and not to the policy as a whole. 44 C.J.S. Insurance § 336, p. 1284; Trabue v. Dwelling House Ins. Co., 121 Mo. 75, 25 S.W. 848, 23 L.R.A.

719; Loehner v. Home Mut. Ins. Co., 17 Mo. 247; Koontz v. Hannibal Sav. and Ins. Co., 42 Mo. 126; Hesselberg v. Aetna Life Ins. Co., 8 Cir., 102 F.2d 23.

■ When we apply the above mentioned doctrine to the case at bar it is clear that the court did not err in refusing to direct a verdict for defendant. The Babaco Warranty related only to loss by robbery from unattended automobiles. The evidence shows there was no money taken from the automobile in question.

■ But appellant argues that had the alarm been in good order and set at "on" the alarm would have sounded when the hood was lifted and the coil taken, hence the likelihood of a successful holdup of the messenger would have been materially reduced. The answer to this is obvious. The fancied relation between the alleged breach of warranty and the loss rests on speculation and conjecture. Furthermore, it did not result in loss from the automobile.

■ Appellant's next point is directed at instruction No. 6, given at plaintiff's request. It charged the jury with reference to the proper rules to be applied in construing the terms of the contract. This was error, but was harmless under the circumstances, since in no event did a breach of the warranty constitute a defense under the facts developed by the evidence.

■■ Appellant next complains that the court erred in submitting to the jury the issue of vexatious refusal to pay. Section 375.420 RSMo 1959, V.A.M.S., which authorizes such penalties has been held to be highly penal, and should be strictly construed. The penalties should not be assessed unless the facts show that the company's refusal to pay was willful and without reasonable cause, as the facts would appear to a reasonable person before trial. If there is an open question of law, or if under the facts as they appear before trial, the company has reasonable grounds to believe it has a meritorious defense, it should not be penalized under this statute.

Scott v. Missouri Insurance Co., Mo.App., 246 S.W.2d 349.

We find no evidence of bad faith on the part of the defendant. We also believe that a person presented with the facts of this case could reasonably believe there was a valid defense to the action. For that reason, we hold that the court erred in submitting to the jury the issue of vexatious refusal to pay the claim.

If within 30 days, the plaintiff will remit the sum of $231.87 from the judgment, the amount allowed by the jury as a penalty under Section 375.420, supra, the judgment will be affirmed in the sum of $2,-492.66, the amount found due under the policy plus interest; otherwise the judgment will be reversed and the cause remanded for new trial.

WOLFE, Acting P. J., and R. K. EL-LIOTT, Special Judge, concur.