BRIGHT, Circuit Judge,
concurring in part and dissenting in part.
I concur in affirming the district court’s decision to void the personal property coverage of the Neidenbachs’ homeowner’s policy. I believe Liberty Mutual Fire Insurance Co. v. Scott, 486 F.3d 418 (8th Cir. 2007), controls the outcome in this case. I read Scott as holding that a large discrepancy between an insured’s valuation of personal property in a bankruptcy proceeding and the valuation of the same property in an insurance claim—absent evidence the bankruptcy petition was inaccurate or the amounts claimed in the insurance proof of loss resulted from mistake or inadvertence—establishes a material misrepresentation as a matter of law. See id. at 423. As the court notes, the discrepancy between the two values is even larger here than it was in Scott.
I do not believe, however, that a misrepresentation on the personal property coverage necessarily voided the Neidenbachs’ separate coverage for their dwelling. I therefore respectfully dissent from that portion of our opinion, and would reverse *568 the district court’s decision to void the coverage on the dwelling.
■ In cases dating back as far as 1852, the Missouri Supreme Court has developed a well-established rule of treating each risk insured under a multi-coverage policy as a separate insurance policy. This rule is referred to as the doctrine of separability. Under the doctrine of separability, a misrepresentation as to one covered risk does not necessarily void coverage as to another covered risk unless the insurer shows the misrepresentation was also material to that specific risk. Arnica Mutual did not establish the misrepresentations the Neid-enbachs made with respect to their personal property were material to the separate coverage for the dwelling. As a result, Arnica Mutual was not entitled to summary judgment on the Neidenbachs’ claim for the loss of their home.
The doctrine of separability was first discussed by the Missouri Supreme Court in Loehner v. Home Mutual Insurance Co., 17 Mo. 247, 1852 WL 4280 (Mo. 1852). There the insured made a claim under a policy which covered both personal property and a building after a mob destroyed the building, a piano, and some household furniture. The insurer sought to void coverage for both the building and the personal property on the grounds that the insured had not disclosed certain material information in the application for the. policy, namely, the existence of a deed of trust upon the building, the fact that the building was to be used as a “bawdy hquse,” and the fact that the insured sold wine on the premises. Id. at 250.
Although the court held the omissions in the application were warranties which would void the coverage for the building, the court used a different analysis for the separate coverage on the personal property. As to that issue, the court said the coverage would be void only if the insurance company could show the omissions amounted to misrepresentations that were material to the specific risk of insuring the personal property:
With respect to the furniture and piano, although they may be regarded as being insured in the building covered by the insurance, yet, because the statute arbitrarily "avoids the policy as to the building, for the want of the disclosure of a fact which did not at all affect the risk of the insurer, we cannot come to the conclusion that the policy was likewise void as to the furniture and piano. The validity of the policy, as to them, will depend upon the answer to the question, whether the concealment or suppression of the facts that the house was incumbered by a deed of trust, was used as a bawdy house, and that wines were sold and drank, as stated in the evidence, did materially enhance the risk of the insurers, or would a knowledge of them have induced a refusal to insure. In relation to this matter, the doctrine of warranties in policies of insurance has no application, but the ground on which the invalidity of the contract of insurance is based, is a concealment or suppression of facts material to the risk.
Id. at 256-57.
The Missouri Supreme Court further developed this principle in 1894, in Trabue v. Dwelling House Insurance Co., 121 Mo. 75, 25 S.W. 848 (1894). As is the case here, Trabue involved a loss by fire and' an insured’s claim for both personal property and a dwelling under a single policy. The policy had a provision which purported to void the entire policy if there was any change in the interest or title to the home. Prior to the fire, the insured died leaving a wife and four children and a will which divided up the interests in the home among all five of them, thus changing the interest or title to the home. Relying upon *569 the provision purporting to void the entire policy, the insurance company sought to void both the coverage for the home and the personal property. Id. at 848.
Referring to its decision in Loehner, the Missouri Supreme Court rejected the insurer’s position and reaffirmed that—despite the policy language purporting to void the entire policy if there was any change in interest or title to the home— the separate coverage for the personal property remained valid. The court interpreted the policy’s use of the word “entire” to refer only to the portion of the policy affected by the change in title:
No reason is given here why a forfeiture should be enforced, except the insertion of the word “entire” into the policy. The risk was not increased. The premiums were taken, kept, and enjoyed for insurance on the personal property. The policy as to the house was avoided, doubtless, through the ignorance of the insured; but they have violated no condition as to this personal property. Holding, then, as we do, that this was a divisible contract, it results that the legal effect is the same as if two distinct and separate policies were issued, and, so reading the contract, we do not reject the word “entire” at all, but apply it to that policy, or portion of this policy, which the insured has forfeited by the change of title to which alone this clause refers [i.e., the coverage on the home]; and it avoids that “entire” policy, and not the policy in which no condition or warranty has been broken [i.e., the coverage on the personal property].
Id. at 850.
In describing the holding in Loehner, the court said:
As early as the case of Loehner v. Insurance Co., 17 Mo. 247, it was held by this court that where a firm obtained insurance upon a storehouse and a stock of goods therein in separate amounts, and the insurance on the house was avoided because the interest in the house was incorrectly described in the application, the policy was not vitiated as to the goods; in other words, this court then held that such a contract was divisible.
Id. at 849.
The Missouri Supreme Court also discussed the sound policy reasons behind dividing a multi-coverage policy into separate policies when the insurer calculates each risk separately:
When one applies for distinct and separate insurance, a part on real estate, a part on personal property, he can require two separate policies. The accidental circumstance that for convenience merely they are included in one policy does not merge them into one. If the goods alone were destroyed, the terms of the policy applying to them alone could be made the basis of recovery. ... There is nothing to indicate the company would not have assumed the risk on the house without taking one also on the goods, nor vice versa.
Id.
The rule of law announced by the Missouri Supreme Court in Loehner and Tra-bue was articulated by the Missouri Court of Appeals in 1915 in Fager v. Commercial Union Assurance Co., 189 Mo.App. 464, 176 S.W. 1064 (1915). In Fager, the court said:
Where the policy separates the property insured into distinct classes and specifies the amount of insurance upon each, the contract is severable into as many contracts as there are separate classes of property insured on separate valuations, and the fact that the policy may be void as to the insurance on one *570 class will not necessarily impair its validity as to another.
Id. at 1065 (citing Loehner, Trabue, Koontz v. Hannibal Savings & Ins. Co., 42 Mo. 126 (1868); and Crossan v. Pa. Fire Ins. Co., 133 Mo.App. 537, 113 S.W. 704 (1908)).
Koontz, one of the cases Fager cites, also involved a misrepresentation claim under a policy covering both a building (a stable) and personal property (horses and other personal property located in the stable) from loss by fire. The insured misrepresented in the application that he owned the stable outright, when it was actually encumbered by a deed of trust. 42 Mo. at 128. The question presented was whether that misrepresentation also voided the separate coverage on the personal property. The court followed the rule announced in Loehner where “it was held that although a failure to disclose an encumbrance would avoid a policy on a house insured, yet it would not avoid it as to furniture insured in the same policy, but separately appraised, unless the fact concealed was shown to be material to the risk.” I& at 129 (emphasis added). The court then held that the misrepresentation about the encumbrance on the building did not void the separate coverage for the personal property, because the “other property was separately valued and appraised, and there is nothing to show that the representation as to encumbrances on the stable formed an inducement to the execution of the policy covering the personal property.” Id. at 130; see also State ex rel. Burton v. Allen, 312 Mo. 111, 278 S.W. 772, 775 (1925) (agreeing with a party’s argument that a jury instruction “declaring that a false and fraudulent representation that plaintiff was the owner of the stock described avoids the policy as to other, articles insured, is in conflict with the decisions of this court” and holding that alleged misrepresentations as to number of horses and mules separately valued under a policy that also insured vehicles and harnesses did not void the separate coverage on the vehicles and harnesses).
The doctrine of separability developed by the Missouri Supreme Court in these early cases is still the law in Missouri. See, e.g., Beckon v. Amco Ins. Co., 616 F.3d 812, 817 (8th Cir. 2010) (applying the doctrine of separability under Missouri law and holding that a lack of insurable interest on an insured building did not necessarily void separate coverage for personal property); Consumer’s Money Order Corp. of Am., Inc. v. New Hampshire Ins. Co., 386 S.W.2d 674, 677 (Mo. Ct. App. 1964) (“If the character of the risks assumed is such that what affects the risk on one item does not affect the risk on the others the parties must have intended that the policy should be regarded as severable and divisible, and any warranty the breach of which could only affect one item will be deemed directed to that item and not to the policy as a whole.”); Allstate Indem. Co. v. Rice, No. 4:12-CV000178, 2013 WL 1314195, at *2 (W.D. Mo. March 28, 2013) (“Missouri law holds that where there exists a multi-coverage policy, each coverage may be analyzed as a separate contract of insurance. See Trabue v. Dwelling House Ins. Co., 121 Mo. 75, 25 S.W. 848 (1894) (holding an insurance contract to be divisible to the effect of having two distinct and separate policies regarding coverage of the dwelling house and coverage of personal property).”).
In Hesselberg v. Aetna Life Insurance Co., we specifically noted that the doctrine of separability applies under Missouri law unless the “untrue representation affects all parts of the insurance contract.” 102 F.2d 23, 26 (8th Cir. 1939) (emphasis added). In other words, consistent with what the Missouri Supreme Court has said time *571 and again, we recognized that a particular misrepresentation must be material to a specific insured risk in order to void that specific coverage in a multi-coverage policy.
My colleagues conclude we are bound by Patterson v. State Automobile Mutual Insurance Co., 105 F.3d 1251 (8th Cir. 1997). I disagree. True, Patterson held that “both federal and state courts applying Missouri law have specifically stated that Missouri common law permits forfeiture ... of all benefits even if the jury found that Mr. Patterson made a material misrepresentation with regard to only one type of coverage provided by the policy[.]” Id. at 1253. But four of the five cases to which Patterson referred were fraud cases, not misrepresentation cases, and were decided on fraud principles. See Vitale v. Aetna Cas. & Surety Co., 814 F.2d 1242, 1247-48 (8th Cir. 1987) (involving alleged arson where the insurer denied coverage on the basis of “fraud in the filing of an insurance claim” under a policy which barred all coverage “in the case of any fraud or false swearing by the insured relating thereto”); Farm Bureau Town & Country Ins. Co. v. Crain, 731 S.W.2d 866, 875 (Mo. Ct. App. 1987) (involving a “false swearing” fraud case); Arel v. First Nat’l Fire Ins. Co., 195 Mo. App. 165, 190 S.W. 78, 80 (1916) (involving a “false and fraudulent swearing” case decided on fraud principles); Hall v. W. Underwriters’ Ass’n, 106 Mo.App. 476, 81 S.W. 227, 227 (1904) (same).[3]
As Arnica Mutual is quick to note, however, Missouri law distinguishes between fraud and misrepresentation. Arnica Mutual argues “Missouri courts consistently hold that an insurer is not required to prove the elements of fraud in order to avoid coverage [due to a misrepresentation].” Appellee’s Br. at 15 (citing Emp’rs. Mut. Cas. Co. v. Tavernaro, 4 F.Supp.2d 868, 870 (E.D. Mo. 1998)). Here, Arnica Mutual seeks to void coverage relying upon the policy’s misrepresentation clause, without proving the elements of fraud. Arnica Mutual therefore cannot rely upon cases decided under fraud principles in this misrepresentation case. Similarly, Patterson’s application of fraud cases to a misrepresentation claim was unsound.
Although the fifth case to which Patterson referred was a misrepresentation case, Childers v. State Farm Fire & Casualty Co., all the Missouri Court of Appeals said in Childers was that “[u]nder Missouri case law a misrepresentation as to a portion of the loss may void coverage to the entire claim.” 799 S.W.2d 138, 141 (Mo. Ct. App. 1990) (emphasis added). That statement is true, and not inconsistent with the Missouri Supreme Court’s well-entrenched separability doctrine, where an insured may void all parts of a policy by showing the misrepresentation was material to each specific insured risk, but may not without making that requisite showing. To be consistent with Missouri Supreme Court decisions, the Missouri Court of Appeals’ use of the word “may” in Childers must be viewed as conditional—allowing a misrepresentation to void an entire policy only when the insurer makes the requisite showing required by the separability doctrine. Instead, our court reads the word “may” as permissive—allowing an insured to void all coverage under all circum *572 stances. Where there is an interpretation of Childers that can be harmonized with Missouri Supreme Court decisions, we should not adopt an inconsistent one.
Every case cited in both Patterson and Vitale were decisions from the Missouri Court of Appeals, not the Missouri Supreme Court. If there is a conflict between the “false swearing” fraud cases decided by the Missouri Court of Appeals (or the Childers case) and the separability doctrine/misrepresentation cases decided by the Missouri Supreme Court, we are bound to follow the latter. See Smith v. ConocoPhillips Pipe Line Co., 801 F.3d 921, 925 (8th Cir. 2015) (“In deciding matters of state law, we are bound by the decisions of the state’s highest court.”) (internal quotation marks and citation omitted).
Most importantly, the holding in Patterson conflicts with our recognition in Hesselberg that Missouri’s doctrine of separability applies unless the “untrue representation affects all parts of the insurance contract,” i.e., the insurer shows the misrepresentation is material to each specific insured risk. 102 F.2d at 26 (emphasis added). Hesselberg was decided prior to Patterson, and thus Hesselberg should control our decision in this case and not vice versa. See Mader v. United States, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (“[W]hen faced with conflicting panel opinions, the earliest opinion must be followed as it should have controlled the subsequent panels that created the conflict.”) (internal citation and quotation marks omitted). In addition, correctly interpreting the word “may” in Childers consistent with controlling Missouri Supreme Court decisions does not result in any intervening change in state law that would allow Patterson (or Scott) to implicitly overrule Hesselberg. Finally, Childers should not be considered an intervening state court decision in conflict with Hes-selberg in any event, because it is not a decision from the Missouri Supreme Court. See Beckon, 616 F.3d at 820 (explaining that a federal court must follow an intervening state court decision that cannot be harmonized with a prior federal appellate decision “[w]hen the highest court of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court”) (emphasis added) (internal citation and quotation marks omitted). As a result, the Patterson panel was not at liberty to use Childers to implicitly overrule Hesselberg’s correct application and interpretation of the Missouri Supreme Court’s well-developed separability doctrine.
Arnica Mutual has not yet shown that any misrepresentations the Neidenbachs made with respect to their personal property were material to the separate risk of insuring their dwelling. I therefore would reverse the district court’s grant of summary judgment with respect to the separate coverage on the dwelling, and remand this case for further proceedings.

. To the extent the result in Vitale was based on the policy's misrepresentation provision, as opposed to its fraud provisions, the case is distinguishable from the circumstances present here because the "destruction of the [entire] property by arson and the amount, if any, of [the insured's] business interruption damages [were] material to the insurance contract as a whole.” 814 F.2d at 1250. Here, Arnica Mutual has not yet shown that the misrepresentations the Neidenbachs made with respect to their personal property were material to the separate coverage on the dwelling.